Abulkalam M. SHAMSUDDIN and Proprietary Nutritionals, Inc., Plaintiffs

v.

VITAMIN RESEARCH PRODUCTS, Defendant

No. CIV. AMD 04–1634.

United States District Court, D. Maryland.

Nov. 30, 2004.

Andrew Charles Aitken, Venable LLP, Washington, DC, for Plaintiff.

## MEMORANDUM OPINION

DAVIS, District Judge.

Plaintiffs, AbulKalam M. Shamsuddin, M.D., Ph.D. ("Dr.Shamsuddin") and Pro-

prietary Nutritionals, Inc. ("PNI"), brought a patent infringement action against defendant Vitamin Research Products ("VRP"), a company organized under the laws of Nevada. Now pending is defendant's motion to dismiss for lack of personal jurisdiction and improper venue, or, alternatively, to transfer venue. The issues have been fully briefed and no hearing is necessary. Local Rule 105.6 (D.Md. 2004). For the reasons stated herein, I am persuaded that personal jurisdiction over defendant is wanting. Accordingly, in lieu of dismissal, I shall transfer this case to the United States District Court for the District of Nevada.

## I.

Dr. Shamsuddin is a Maryland resident and a professor of pathology at the University of Maryland School of Medicine. In 1992, the United States Patent & Trademark Office granted Dr. Shamsuddin U.S. Patent No. 5,082,833 ("the '833 patent") for his invention of a method and pharmaceutical composition for treating cancer using a combination of a compound called inositol hexaphosphate (abbreviated as "IP6") and a related compound called inositol. PNI, a Canadian company, is the exclusive licensee of the '833 patent. Defendant VRP is a privately-held corporation organized under the laws of Nevada, with its principal place of business in Carson City, Nevada. VRP is engaged in the development, manufacture, marketing, and sale of vitamins and dietary supplements. VRP's products are developed, manufactured, and tested at its headquarters in Carson City. It is undisputed that VRP has never maintained any offices or manufacturing facilities in Maryland and has

never had any distributors in Maryland. VRP also has no property or bank accounts in Maryland.

Plaintiffs allege that VRP has infringed the '833 patent through the manufacture, use, sale, offer to sell, marketing, distribution, and/or importation of dietary supplements, including VRP's IP6/inositol product called "Product Code 1351, IP6, 400 mg, 120 capsules." VRP sells its products through two channels of distribution: a mail-order catalog featuring a toll-free number for placing orders by telephone, and a website, *www.vrp.com*, which is capable of accepting orders and credit card payments electronically.[1] According to Dr. Shamsuddin's affidavit, two of his acquaintances ordered the allegedly infringing IP6/inositol product in May 2004, one through VRP's toll-free number and one through VRP's website. VRP accepted payment from the individuals' credit cards and shipped the allegedly infringing product to addresses in Maryland.[2]

Citing *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997), plaintiffs argue that jurisdiction is proper because VRP operates an interactive website through which customers in Maryland can place orders. VRP argues that jurisdiction is improper because its Internet activity is wholly distinguishable from the continuous and systematic transmission of information via the Internet which formed the basis for jurisdiction in *Zippo*. VRP also maintains that exercising jurisdiction would violate "traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

---

**1.** The website supplies a fax number and mailing address which customers also may use to order products.

**2.** According to the affidavit of Robert Watson, President and CEO of VRP, as of August 10, 2004, the IP6/inositol product at issue was no longer being sold by VRP and was not referenced on VRP's website.

## II.

■ As this is a patent infringement case, I apply Federal Circuit law to determine whether this court may exercise personal jurisdiction over the defendant. *Hildebrand v. Steck Mfg. Co., Inc.,* 279 F.3d 1351, 1354 (Fed.Cir.2002). Where, as here, a hearing is not held, in order to defeat a motion to dismiss for lack of personal jurisdiction, *see* Fed.R.Civ.P. 12(b)(6), the plaintiffs' burden is to establish *prima facie* that defendant is subject to personal jurisdiction. *Elecs. For Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1349 (Fed.Cir.2003). In considering a challenge to personal jurisdiction, the court must construe all relevant pleadings and affidavits in the light most favorable to plaintiffs. *Graphic Controls Corp. v. Utah Med. Prods.,* 149 F.3d 1382, 1383 n. 1 (Fed.Cir.1998).

### A.

■ Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's "long-arm" statute permits service of process, and whether the assertion of jurisdiction is consonant with due process considerations. *See Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1200–01 (Fed.Cir.2003). Maryland's long-arm statute has been interpreted as extending to constitutional limits; consequently, these two inquiries collapse into a single inquiry: whether an exercise of personal jurisdiction over a defendant comports with due process. *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir.1993).

■ Due process requires that the defendant have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154 (citation omitted). The constitutional touchstone is whether the defendant's contacts with the state are of such a quality and nature that it could reasonably expect "being haled into court there." *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■ The nature and quality of the "minimum contacts" necessary to support jurisdiction depend upon whether the plaintiff asserts general or specific personal jurisdiction over the defendant. General jurisdiction refers to the authority of a court to hear any cause of action involving a defendant, even when the cause of action has no relation to the defendant's contacts with the forum state. The defendant must have "continuous and systematic" contacts with the forum state in order for a court to assert general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In the case at bar, the only contacts defendant has had with Maryland include two sales to Maryland residents and the maintenance of a website which is accessible to users in all jurisdictions, including Maryland. Plaintiffs do not assert that these contacts are sufficient to support general jurisdiction over VRP.

■ When a non-resident defendant's contacts with the forum state are related to or give rise to the cause of action, a court may exercise specific jurisdiction. The Federal Circuit has set forth a three-factor test to determine whether asserting specific jurisdiction satisfies due process in a patent case: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Silent Drive,* 326 F.3d at 1202. The first two factors correspond

with the "minimum contacts" prong of the *International Shoe* due process analysis, and the third factor corresponds with the "fair play and substantial justice" prong. *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1360 (Fed.Cir.2001). Plaintiff has the burden of establishing the first two factors. *Id.* As to the third factor, the burden of proof is on the defendant to make a compelling case that other considerations render the exercise of jurisdiction constitutionally unreasonable. *Id.*

### B.

Courts analyzing personal jurisdiction have struggled with the proper treatment of defendants' Internet-related activities. Initially, when lawsuits involving Internet activities were less common, courts applied traditional personal jurisdiction rules, with varying results. In an early case which is now largely discredited, a court held that a defendant's website alone was a sufficient contact with the forum state and constituted purposeful availment because the defendant knew that its website would reach everyone with access to the Internet, including residents of the forum state. *Inset Sys., Inc. v. Instruction Set, Inc.,* 937 F.Supp. 161, 165 (D.Conn.1996). Other courts concluded that website advertising, without more, was insufficient to establish "minimum contacts." *See, e.g., Bensusan Rest. Corp. v. King,* 937 F.Supp. 295, 299 (S.D.N.Y.1996), *aff'd by Bensusan Rest. Corp. v. King,* 126 F.3d 25 (2d Cir.1997) ("the mere fact that a person can gain information on the allegedly infringing product is not the equivalent of a person advertising, promoting, selling or otherwise making an effort to target its product in [the forum state]").

Taking notice of a "global [Internet] revolution" and minding the Supreme Court's announcement almost 50 years ago that technological progress demands a flexible jurisdictional standard, *see Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the court in *Zippo Manufacturing Company v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa. 1997), broke new ground by articulating a personal jurisdiction test tailored to the Internet. The court set out a sliding scale, declaring that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 1124. At one end of the sliding scale, personal jurisdiction exists because the defendant "clearly does business over the Internet." *Id.* The court cited as an example a case in which the defendant entered into an ongoing contract with a resident of the forum state and purposefully and repeatedly sent computer files over the Internet to the forum state. *Id.* (citing *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996)). At the other end of the sliding scale, personal jurisdiction does not exist because a defendant's Internet activity is "passive," such as where the defendant merely posts information on a website which is accessible to users in foreign jurisdictions. *Id.* In between the two ends of the sliding scale are "interactive" websites which permit the exchange of information between the website and the user. In such cases, whether jurisdiction is proper is "determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

Applying this newly articulated test to the facts before it, the *Zippo* court concluded that "[t]his is a 'doing business over the Internet' case." *Id.* at 1125. The plaintiff, the Pennsylvania-based manufacturer of the well known "Zippo" tobacco lighters, sued Zippo Dot Com, Inc., a California corporation and operator of an Internet news service, alleging trademark

infringement, among other causes of action. Defendant had obtained the exclusive right to use the Internet domain names "zippo.com", "zippo.net", and "zipponews.com" and also used the word "zippo" in numerous locations on its website and in the heading of newsgroup messages posted by its subscribers on its website. Approximately 140,000 people worldwide subscribed to defendant's service by filling out an online application and then making payment by credit card either over the Internet or by telephone. Each subscriber was assigned a password which gave the subscriber permission to view and/or download newsgroup messages stored on the defendant's server in California. Approximately 3,000 of the defendant's subscribers were Pennsylvania residents. In addition, the defendant entered into agreements with seven Internet service providers in Pennsylvania to permit their subscribers to access the defendant's news service.

The *Zippo* court carefully delineated the scope of its holding in light of the facts of the case. The court stated:

> We are not being asked to determine whether Dot Com's Web site *alone* constitutes the purposeful availment of doing business in Pennsylvania .... We are being asked to determine whether Dot Com's *conducting of electronic commerce* with Pennsylvania residents constitutes the purposeful availment of doing business in Pennsylvania. We conclude that it does. Dot Com has contracted with approximately 3,000 individuals and seven Internet access providers in Pennsylvania. The intended object of these transactions has been the downloading of the electronic messages that form the basis of this suit in Pennsylvania.

*Id.* at 1125–26 (emphasis added).

*Zippo* has proved to be a watershed case, as courts around the country have adopted its sliding scale approach to analyzing personal jurisdiction in the context of the Internet. *See, e.g., Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 452–54 (3d Cir.2003) (describing *Zippo* as a "seminal authority regarding personal jurisdiction based upon operation of an Internet web site" and applying principles articulated in *Zippo* ); *ALS Scan v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 714 (4th Cir.2002) (stating "[w]e adopt today the model developed in [*Zippo* ]"); *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 890 (6th Cir.2002) (expressing approval of *Zippo*'s " 'sliding scale' of interactivity to identify Internet activity that constitutes purposeful availment"); *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir.1999) (announcing "[w]e find that the reasoning of *Zippo* is persuasive and adopt it in this Circuit"). The sliding scale test is now the underpinning of nearly every analysis of jurisdiction based on Internet activities.[3]

Despite the widespread acceptance of *Zippo*'s analytical approach, it is manifest that courts have interpreted and applied

---

**3.** Although the *Zippo* court articulated its sliding scale test within the particular context of whether personal jurisdiction could be exercised over a defendant operating its own website, courts have applied the sliding scale and jurisdictional concepts set forth in *Zippo* to other scenarios involving defendants and cyberspace. *See, e.g., United Cutlery Corp. v. NFZ, Inc.,* Civil No. CCB–03–1723, 2003 WL 22851946, 2003 U.S. Dist. LEXIS 21664 (D.Md. Dec.1, 2003) (applying a specialized personal jurisdiction test based on the *Zippo* sliding scale to defendant's product sales through Internet auction sites but not to defendant's purchases over the Internet); *Machulsky v. Hall,* 210 F.Supp.2d 531 (D.N.J. 2002) (applying *Zippo* to defendants' Internet activity, which consisted of purchases through "eBay," an Internet auction site).

the *Zippo* test differently. Although courts consistently recognize what the *Zippo* court characterized as "[a] passive Web site that does little more than make information available to those who are interested in it," *Zippo*, 952 F.Supp. at 1124, there is less of a consensus about the requisite level of website interactivity to confer personal jurisdiction and what constitutes "doing business over the Internet." Some courts have held that sufficient minimum contacts are established, and the defendant is "doing business" over the Internet, where the defendant's website is capable of accepting and does accept purchase orders from residents of the forum state. *See, e.g., Euromarket Designs, Inc. v. Crate & Barrel Limited,* 96 F.Supp.2d 824, 838 (N.D.Ill.2000) (stating that defendant "clearly is doing business over the website" because it purposefully designed "a website with a high level of interactivity, enabling customers to browse through an online catalog and place orders via the Internet"); *Stomp v. NeatO, LLC,* 61 F.Supp.2d 1074, 1078 (C.D.Cal.1999) (holding that defendant's two online sales "constitutes conducting business over the Internet, and therefore under the test enumerated in *Zippo* . . . asserting personal jurisdiction is proper"). Other courts have rejected the idea that a company operating a website is subject to the jurisdiction of any forum whose citizens have purchased the company's goods via the Internet. *See, e.g., Millennium Enters., Inc., v. Millennium Music, LP,* 33 F.Supp.2d 907, 921 (D.Or.1999) (concluding that "[t]he fact that someone who accesses defendants' Web site can purchase [one of defendant's products] does not render defendants' actions 'purposefully directed' at this forum").

Courts have held that selling goods over Internet auction sites does not subject a defendant to the jurisdiction of the purchasers, despite the interactivity of the online auction sites. *See, e.g., United Cutlery Corp. v. NFZ, Inc.,* Civil No. CCB–03–1723, 2003 WL 22851946, 2003 U.S. Dist. LEXIS 21664 (D.Md. Dec.1, 2003); *Machulsky v. Hall,* 210 F.Supp.2d 531 (D.N.J.2002); *Winfield Collection, Ltd. v. McCauley,* 105 F.Supp.2d 746 (E.D.Mich. 2000). Judge Blake, in *United Cutlery Corp.,* 2003 WL 22851946, 2003 U.S. Dist. LEXIS 21664, concluded that sales through Internet auction sites such as "eBay" and "Yahoo!" did not demonstrate purposeful availment. The court observed that, "[a]lthough the websites were interactive and designed for the purpose of selling products to participating users, [the defendant] exercised no authority over maintenance of the websites, nor did he exert control over the audience they targeted." *Id.* at *4, 2003 U.S. Dist. LEXIS 21664, *13. Noting that the defendant's "manifested intent was to sell to the highest bidder, regardless of the state in which the bidder resided," the court determined that the defendant had not " 'directed activity' into Maryland with the 'manifested intent of engaging in business or other interactions within the State,' " *i.e.,* had not purposefully availed itself of the privilege of conducting business in Maryland. *Id.* (quoting *ALS Scan,* 293 F.3d at 714).[4]

Several courts either explicitly or implicitly have criticized *Zippo*'s emphasis on website interactivity. One court stated that it was reluctant to follow *Zippo* because "it is not clear why a website's level of interactivity should be determinative on the issue of personal jurisdiction." *Hy*

---

4. Although the plaintiff offered no evidence of Internet sales by the defendant to Maryland residents, the court recognized that personal jurisdiction would only be proper if the defen- dant engaged in "significant activities in Maryland." *United Cutlery Corp.,* 2003 WL 22851946, **6–7, 2003 U.S. Dist. LEXIS 21664, at *14–15.

*Cite Corp. v. Badbusinessbureau.Com, LLC,* 297 F.Supp.2d 1154, 1160 (W.D.Wis. 2004). The court explained:

The website's level of interactivity may be one component of a determination whether a defendant has availed itself purposefully of the benefits or privileges of the forum state. For example, a finding that a defendant uses its website to engage in repeated commercial transactions may support the exercise of personal jurisdiction, so long as there is a corresponding finding that the defendant is expressly targeting residents of the forum state and not just making itself accessible to everyone regardless of location.

*Id.* at 1161. *See also Am. Info. Corp. v. Am. Infometrics, Inc.,* 139 F.Supp.2d 696, 699 n. 6 (D.Md.2001) (stating that a website's interactive features were irrelevant where no Maryland residents were customers of the defendant). Several commentators also have criticized the *Zippo* sliding scale for failing to encapsulate traditional due process principles. *See, e.g.,* Michael A. Geist, *Is There a There There? Toward Greater Certainty for Internet Jurisdiction,* 16 Berkeley Tech L.J. 1345, 1377 (2001) (noting that application of the *Zippo* test has produced "inconsistent and often undesirable outcomes"); Titi Nguyen, *A Survey of Personal Jurisdiction Based on Internet Activity: A Return to Tradition,* 19 Berkeley Tech. L.J. 519, 541 (2004) ("Since a defendant's Internet activity is not different from activity in real space, the Internet is not so different that it requires the application of new or technology-specific rules"); Veronica M. Sanchez, *Taking a Byte Out of Minimum Contacts: A Reasonable Exercise of Personal Jurisdiction in Cyberspace Trademark Disputes,* 46 UCLA L.Rev. 1671, 1704 (1999) (stating that "[t]he *Zippo* court's categorization of Internet personal jurisdiction cases into a spectrum of three types of situations is not a useful typology"); Comment, *Is Zippo's Sliding Scale a Slippery Slope of Uncertainty? A Case for Abolishing Web Site Interactivity As a Conclusive Factor in Assessing Minimum Contacts in Cyberspace,* 34 J. Marshall L.Rev. 1051, 1068 (2001) (opining that a focus on the characteristics of a website has "illogically obfuscated the court's focus on the defendant's conduct"); Note, *No Bad Puns: A Different Approach to the Problem of Personal Jurisdiction and the Internet,* 116 Harv. L.Rev. 1821, 1833–34 (2003) (hereinafter *"No Bad Puns"*) (noting that Internet contacts should not be treated differently than other types of contacts and "the *Zippo* test fails to serve the interests that personal jurisdiction seeks to protect").

### III.

### A.

■ I concur with those courts and commentators that have concluded that "[t]he construction of the information superhighway does not warrant a departure from the well-worn path of traditional personal jurisdiction analysis." *S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.,* 79 F.Supp.2d 537, 543 (E.D.Pa.1999). The *Zippo* court itself stated:

Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper. Different results should not be reached simply because business is conducted over the Internet.

*Zippo,* 952 F.Supp. at 1124. Depending on the facts presented, website interactivity may have some bearing on the jurisdictional analysis, but it does not control the outcome.

The *Zippo* court did not declare that personal jurisdiction depends on the char-

acteristics of a defendant's website, to the exclusion of traditional jurisdictional factors. *See No Bad Puns,* 116 Harv. L.Rev. at 1831–32 (stating that although *Zippo* "did not set out. to establish a test, let alone an enclave within purposeful availment for Internet contacts, courts across the country have used and continue to use *Zippo*'s analysis in exactly that way"). Noting that "the development of the law concerning the permissible scope of personal jurisdiction based on Internet use is in its infant stages," the court in *Zippo* reviewed the available cases and commentary and observed that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo,* 952 F.Supp. at 1124; *see* Note, *A "Category–Specific" Legislative Approach to the Internet Personal Jurisdiction Problem in U.S. Law,* 117 Harv. L.Rev. 1617, 1624 (2004) ("For the *Zippo* court, interactivity was nearly synonymous with commerciality"). As an example of activities that would subject a defendant to jurisdiction, the court cited the defendant's conduct in *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996), a case in which the defendant did not even operate a website. Asserting personal jurisdiction over that defendant was appropriate because he "enter[ed] into contracts with [a] resident[ ] of a foreign jurisdiction that involve[d] the knowing and repeated transmission of computer files over the Internet," *Zippo,* 952 F.Supp. at 1124, not because he operated an interactive website.

The first prong of the three-factor test to determine whether asserting specific jurisdiction satisfies due process is "whether the defendant 'purposefully directed' its activities at residents of the forum." *Silent Drive,* 326 F.3d at 1202. "The objective of the purposeful availment requirement is to provide predictability and give

notice to the defendant that it is subject to suit in the forum state, so that the company 'can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State.' " *Hy Cite,* 297 F.Supp.2d at 1163 (citing *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559). The Supreme Court has stated:

> [I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury .... The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*World–Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. 559 (citations omitted). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Courts must evaluate the "quality and nature" of the defendant's contacts with the forum State, *Int'l Shoe,* 326 U.S. at 319, 66 S.Ct. 154, and the requirements of due process will be satisfied if a defendant has created a "substantial connection" with that State, *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. " 'Some single or occasional acts' related to the forum may not be sufficient to establish jurisdiction if 'their nature and quality

and the circumstances of their commission' create only an 'attenuated' affiliation with the forum." *Id.* at 476 n. 18, 105 S.Ct. 2174.

■■■ Website interactivity is important only insofar as it reflects commercial activity, and then only insofar as that commercial activity demonstrates purposeful targeting of residents of the forum state or purposeful availment of the benefits or privileges of the forum state. In the jurisdictional context, there is no critical difference between operating a toll-free, nationwide telephone number capable of accepting purchase orders, on the one hand, and operating a website capable of accepting purchase orders. Similarly, there is no critical difference between operating a middle-category, "interactive" website with an e-mail link or printable order form that allows customers to purchase at a later time, on the one hand, and operating an "active" website that allows customers to complete the purchase online. "[T]he ultimate question remains the same, that is, whether the defendant's contacts with the state are of such a quality and nature such that it could reasonably expect to be haled into the courts of the forum state." *Hy Cite*, 297 F.Supp.2d at 1161.

### B.

■■■ Applying these principles to the facts of the instant case, I conclude that plaintiffs have failed to establish that VRP has sufficient minimum contacts with Maryland such that it should reasonably anticipate being haled into court here. VRP has no offices or sales agents in Maryland and solicits no business here through advertising targeted specifically to Maryland. VRP's only contacts with Maryland are a commercial, interactive website which is accessible to Maryland residents (as it is to persons across the country and around the world), and two sales of the IP6/inositol product to Maryland residents who are acquaintances of plaintiff Dr. Shamsuddin. Two sales to Maryland residents and maintenance of a commercial website do not rise to the level of contacts of such "quality and nature" that the exercise of personal jurisdiction over VRP would comport with due process.

A corporation's sales to forum residents must be more than "isolated" occurrences for the assertion of jurisdiction to satisfy the requirements of due process. *Burger King*, 471 U.S. at 476 n. 18, 105 S.Ct. 2174. Although personal jurisdiction jurisprudence has evolved from the days when a defendant must have physically entered the forum in order to be subject to the jurisdiction of its courts, *see Pennoyer v. Neff*, 95 U.S. 714, 5 Otto 714, 24 L.Ed. 565 (1877), today a defendant still must have conceptually "entered" the forum State. *See ALS Scan*, 293 F.3d at 713 (adopting the *Zippo* test to determine when a nonresident defendant "through electronic contacts, has conceptually 'entered' the State via the Internet for jurisdictional purposes"). VRP's two sales of the IP6/inositol product to Maryland residents illustrate neither that VRP "has engaged in significant activities within" Maryland nor that VRP has "created 'continuing obligations' between" itself and Maryland, such that VRP "manifestly has availed [itself] of the privilege of conducting business there." *Burger King*, 471 U.S. at 475–76, 105 S.Ct. 2174.

VRP's website is focused generally on customers throughout the United States and the world, rather than on residents of any particular jurisdiction. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625–26 (4th Cir.1997) (holding that defendant, which conducted its business entirely through mail order and had never "targeted" advertising at the forum State,

was not subject to personal jurisdiction in the forum state). Nothing on VRP's website suggests that VRP intended to target Maryland residents any more than it intended to target residents of other states. Although VRP's website has the capability of processing purchase orders from Maryland residents, and an acquaintance of Dr. Shamsuddin utilized that capability to buy the allegedly infringing product online, these facts by themselves do not evince purposeful availment or create a constitutionally sufficient "substantial connection" with Maryland. *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir.2003) (holding that personal jurisdiction was improper in a trademark infringement action because the defendant did not design its semi-interactive website with the manifest intent of interacting with Maryland residents).

VRP's Internet contacts are distinguishable from the defendant's substantial Internet contacts in *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996), the case cited by the *Zippo* court as an example of a commercial entity "intentionally reach[ing] beyond its boundaries to conduct business with foreign residents." *Zippo*, 952 F.Supp. at 1124. The defendant in *CompuServe*, a Texas resident, subscribed to CompuServe, an Internet service provider headquartered in Ohio. 89 F.3d at 1260. He also entered into an online contract with CompuServe to place his software on CompuServe's system. *Id.* Under the agreement, which provided that it was to be governed by Ohio law, CompuServe acted as an "electronic conduit" to provide its subscribers with access to the defendant's software. *Id.* During a three-year period, the defendant electronically transmitted 32 master software files to CompuServe. *Id.* at 1261. After CompuServe began marketing a product similar to the defendant's software, the defendant threatened to bring a trademark infringe-

ment suit. *Id.* CompuServe filed suit in federal court in Ohio, seeking a declaration of non-infringement. *Id.* The district court granted the defendant's motion to dismiss for lack of personal jurisdiction. *Id.*

The Sixth Circuit reversed and held that jurisdiction was proper. *Id.* at 1268. The defendant, the court noted, entered into a written contract with CompuServe which was governed by Ohio law, "and he then purposefully perpetuated the relationship with CompuServe via *repeated* communications with its system in Ohio." *Id.* at 1264 (emphasis added). He also "purposefully availed himself of CompuServe's Ohio-based services to market his software." *Id.* at 1266. The court declared that "it is [the defendant's] relationship with CompuServe as a software provider and marketer that is crucial to this case." *Id.* "CompuServe, in effect, acted as [the defendant's] distributor, albeit electronically and not physically," as the defendant "repeatedly sent his 'goods' to CompuServe in Ohio for their ultimate sale." *Id.* at 1265. The court emphasized what it did *not* hold, which was that the defendant necessarily would be subject to jurisdiction "in *any* state where his software was purchased or used." *Id.* at 1268 (emphasis in original).

The facts of this case are easily distinguishable. Asserting personal jurisdiction over VRP on the basis of its isolated sales and interactive website would ignore the constitutional requirement of deliberate, rather than merely foreseeable, contacts. The Supreme Court has explained:

> [T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559. Although VRP's decision to sell its products over the Internet was a "purposeful" one, that decision alone cannot demonstrate that VRP took actions purposefully directed toward Maryland specifically. *But see World–Wide Volkswagen,* 444 U.S. at 314, 100 S.Ct. 559 (Marshall, J., dissenting) (opining that jurisdiction should lie where a defendant makes a deliberate choice "to become part of a nationwide, indeed a global, network for marketing and servicing" defendant's product).

The plurality opinion of Justice O'Connor in *Asahi Metal Industry Company, Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), supports my conclusion that it would be unreasonable to assert jurisdiction over VRP. In *Asahi,* the "stream of commerce" eventually brought a Japanese manufacturer's tire valve assemblies into California, the site of injury caused by an explosion in a motorcycle tire.[5] The Supreme Court held that California's exercise of personal jurisdiction over Asahi, the Japanese manufacturer, would violate due process. *Asahi,* 480 U.S. at 108, 107 S.Ct. 1026. Justice O'Connor wrote as follows for a plurality of the Court:

> The "substantial connection" between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.* The placement of a product into the stream of commerce, without more, is not an act of the defen-

dant purposefully directed toward the forum State.

*Id.* at 112, 107 S.Ct. 1026 (emphasis in original). Examples of additional conduct of the defendant that may demonstrate "an intent or purpose to serve the market in the forum State" are "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* "[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.*

VRP's choice to sell its products over the Internet—a sort of global "distributor"—is similar to placing its products into the stream of commerce with the knowledge that the stream "may or will sweep the product[s] into the forum State." Although VRP, unlike Asahi, created and controlled the "distribution system," *i.e.,* its website, VRP engages in no other actions demonstrating "an intent or purpose to serve the market" in Maryland. Insofar as VRP targets no particular forum and will sell to whoever wishes to buy, VRP's placement of its products for sale through its website is no more purposeful than placing products for sale on an Internet auction site.[6] *See, e.g., United Cutlery,* 2003 WL 22851946, *5, 2003 U.S. Dist. LEXIS 21664, at *13 (holding that defendant's product sales through Internet auc-

---

**5.** Asahi sold its tire valve assemblies to a Taiwanese company which incorporated them into its tire tubes, which were sold in various places throughout the world, including California.

**6.** That VRP operates its own website—a fact distinguishing VRP from those who sell through Internet auctions—is irrelevant because maintaining an Internet presence *alone* does nothing to confer personal jurisdiction.

tion sites did not demonstrate purposeful availment).

Presented with facts similar to those in the instant case, the court in *Millennium Enterprises, Inc. v. Millennium Music, LP,* 33 F.Supp.2d 907 (D.Or.1999), held that jurisdiction was lacking. In that case, a retail music seller located in Oregon brought suit against retail music sellers located in South Carolina for trademark infringement. The defendants sold music through retail stores, retail outlets, and a website. The only merchandise defendants sold to any Oregon resident was one compact disc purchased by an acquaintance of plaintiff's counsel through defendants' website. Other than the purchase of inventory from an Oregon distributor and the maintenance of a website, this sale was the only contact defendants had with Oregon, the forum state.

Finding that the sale to the acquaintance of plaintiff's counsel was a thinly veiled attempt by the plaintiff to "manufacture a contact" with the forum, the court held that the defendants had not purposely availed themselves of the protections of the forum on account of such sale.[7] *Id.* at 911. Examining the defendants' Internet contacts with the forum within the framework of the *Zippo* sliding scale, the court stated:

> Arguably, the capability of selling compact discs through the Web site could constitute "doing business" over the Internet and confer personal jurisdiction almost as a matter of course. However, the court finds such designation intended for those businesses which conduct a significant portion of their business through ongoing Internet relationships;

for example, by entering "into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet."

*Id.* at 920 (citing *Zippo,* 952 F.Supp. at 1124). Finding that defendants had done "nothing more than publish an interactive Web site" and had neither purposefully entered into contracts with Oregon residents through the Internet, other than with plaintiff's acquaintance, nor "exchanged files electronically with forum residents so as to create 'repeated' or 'ongoing' obligations," the court determined that defendants did not "conduct business" in Oregon over the Internet and thus did not fall under the first category in *Zippo. Id.*

Noting that defendants' website fell into "the middle interactive category of Internet contacts as described in *Zippo,*" the court held that such category "needs further refinement to include the fundamental requirement of personal jurisdiction: 'deliberate action' within the forum state in the form of transactions between the defendant and residents of the forum or conduct of the defendant purposefully directed at residents of the forum state." *Id.* at 921 (citing *Calder v. Jones,* 465 U.S. 783, 788–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). The court found that such deliberateness was absent, stating, "[t]he fact that someone who accesses defendants' Web site can purchase a compact disc does not render defendants' actions 'purposefully directed' at this forum." *Id.*

In the instant case, the fact that consumers can purchase VRP's products over the Internet fails to demonstrate that VRP has taken actions purposefully directed at

---

7. The court also noted that plaintiff's claim of trademark infringement could not arise from the sale of the compact disc to plaintiff's acquaintance because the gravamen of an infringement claim is whether the defendant

has created a likelihood of confusion and plaintiff's acquaintance knew exactly with whom she was dealing. *Millennium Enters., Inc. v. Millennium Music, LP,* 33 F.Supp.2d 907, 911 (D.Or.1999).

Maryland. The major factor distinguishing this case from *Millennium*—the transactions between VRP and forum residents[8]—is of little significance because those transactions were *de minimis.*[9] *See, e.g., Machulsky v. Hall,* 210 F.Supp.2d 531, 539 (D.N.J.2002) (distinguishing Internet activities involving one or a few business transactions from commercial activity via the Internet that is "substantially more regular and pervasive" and stating that the former do not constitute "purposeful availment"). The Due Process Clause protects a defendant against being subject to the binding judgments of a forum with which the defendant "has established no meaningful 'contacts, ties, or relations.'" *Burger King,* 471 U.S. at 471–72, 105 S.Ct. 2174 (quoting *Int'l Shoe,* 326 U.S. at 319, 66 S.Ct. 154). Here, the paucity of sales to Maryland residents, in combination with a lack of advertising targeted to Maryland, indicate that VRP has not purposefully availed itself of the privilege of conducting activities in Maryland.

In sum, VRP's conduct and relationship with Maryland are not so deliberate and substantial that VRP should reasonably anticipate being haled into court in Maryland. To conclude otherwise would mean that VRP potentially would be subject to personal jurisdiction in any forum where a resident purchases one or two of VRP's products over the Internet or through a nationwide, toll-free phone number. Such a construction of the purposeful availment requirement would negate one of the critical functions of the Due Process Clause, which is to ensure the "orderly administration of the laws" in a federal system, *Int'l Shoe,* 326 U.S. at 319, 66 S.Ct. 154. I find that VRP did not purposefully direct its activities at residents of Maryland, thus, I need not examine the second and third prongs of the three-part test for determining whether personal jurisdiction exists. The conclusion is inescapable that this court lacks personal jurisdiction over VRP.

## IV.

 Plaintiffs request that they be allowed to conduct limited, jurisdictional discovery. I am constrained to deny their request. Under the Federal Rules of Civil Procedure, district courts "have broad discretion" in considering requests for jurisdictional discovery. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir.1993) (quoting *In re Multi–Piece Rim Prods. Liability Litig.,* 653 F.2d 671, 679 (D.C.Cir.1981)).

Plaintiffs have not suggested that VRP has misrepresented any jurisdictional facts. Plaintiffs contend, however, that VRP has selectively withheld facts which doom its motion. Plaintiffs complain that VRP has divulged no information regard-

---

8. In the instant case, as in *Millennium,* it was actions of persons associated with the plaintiff that brought the defendant's product into the forum state. Based on the record, however, I cannot say that the sales to Dr. Shamsuddin's acquaintances were "orchestrated" by Dr. Shamsuddin and that VRP's website or catalog advertising played no part in bringing about the sales. *Cf. Millennium,* 33 F.Supp.2d at 911 ("it was an act of someone associated with plaintiff, rather than defendants' Web site advertising, that brought defendants' product into this forum").

9. In *Tech Heads, Inc. v. Desktop Service Center, Inc.,* 105 F.Supp.2d 1142 (D.Or.2000), decided after *Millennium,* the court held that a defendant had purposefully availed itself of the privilege of conducting activities in the forum state where the defendant advertised nationally, operated a "highly commercial, highly interactive" website, and engaged in one commercial transaction with a forum resident. *Id.* at 1151. As I conclude in text, however, because a defendant must have a "substantial connection" with the forum State in order for jurisdiction to be proper, I am not persuaded to follow the reasoning in *Tech Heads, Inc.*

ing its sales to Maryland customers via its website, the annual number of paper catalogs sent to Maryland addresses, the annual amount of print and electronic advertising that may be visible to Maryland residents, the annual number of inquiries and orders received from Maryland residents, and the annual volume of goods shipped to Maryland residents. Plaintiffs speculate that such information likely would be sufficient to show that VRP is purposefully directing its paper catalogs, along with its website, to Maryland residents. VRP has denied, in an affidavit, that it ever has conducted promotional advertising in print, electronic, or other media specifically targeted toward consumers in Maryland. I am not persuaded that jurisdictional discovery is warranted. *See Carefirst*, 334 F.3d at 403 (holding that the district court acted within its discretion in refusing to allow jurisdictional discovery where it found "'a lack of any concrete proffer by [plaintiff],' no indication of 'fraud or intentional misconduct on the part of [defendant]' in its jurisdiction affidavits, and no reason to believe that the 'additional information [that plaintiff sought] ... would ... alter [the] analysis of personal jurisdiction'"); *see also Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C.1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.") (cited with approval in *Carefirst*, 334 F.3d at 403).

## V.

■ As this court lacks personal jurisdiction over VRP, I must determine whether this case should be dismissed outright or, instead, transferred to another district. Pursuant to 28 U.S.C. § 1406(a), courts have the discretion to transfer a case to another federal district court in which the case could have been brought, if such transfer is in the interests of justice. The Fourth Circuit has interpreted § 1406(a) as authorizing transfer "for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district." *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir.1988). Lack of personal jurisdiction is one such "impediment" upon which transfer may be premised. Personal jurisdiction over VRP is proper in the United States District Court for the District of Nevada because VRP's principal place of business is located there and VRP regularly conducts business within that district. Accordingly, this action shall be transferred to the United States District Court for the District of Nevada. (If plaintiffs would prefer to have the court enter an order of dismissal so that they might appeal my determination of a lack of jurisdiction, or if they prefer to bring suit in some district other than the District of Nevada where VRP may be sued, then they may file a timely motion to alter or amend judgment and I shall consider such request.) An Order follows.