**INSTABOOK CORPORATION,**
Plaintiff,

v.

**INSTANTPUBLISHER.COM,**
**Defendant.**

**No. 6:06 CV 644 ORL 28KR.**

United States District Court,
M.D. Florida,
Orlando Division.

Dec. 18, 2006.

---

9. Fed.R.Civ.P. 11.

Daniel N. Brodersen, James H. Beusse, Terry Marcus Sanks, Beusse Wolter Sanks Mora & Maire, PA, Orlando, FL, for Plaintiff.

Gregory W. Herbert, Greenberg Traurig, P.A., Orlando, FL, Lewis Lyons, Todd B. Murrah, Glassman, Edwards, Wade & Wyatt, P.C., Memphis, TN, for Defendant.

## ORDER

ANTOON, District Judge.

This cause is before the Court on the Motion to Dismiss (Doc. 21) filed by the Defendant, Instantpublisher.com. Defendant contends that the Amended Complaint (Doc. 18) should be dismissed for lack of personal jurisdiction and improper venue. Plaintiff, Instabook Corporation, has filed a memorandum in opposition to the motion. (Doc. 25). Having considered the parties' submissions, the Court concludes that the motion must be granted on the basis of lack of personal jurisdiction.

### I. Background

Plaintiff brought this suit alleging infringement by Defendant of two patents pertaining to "a method and system for producing books on-demand"—an invention called an "electronic bookstore vending machine." (Am.Compl.¶¶ 6–7). In the Amended Complaint, Plaintiff asserts that Defendant is a Tennessee corporation which "[o]n information and belief ... conducts business within this State and/or judicial district; has committed tortious acts, including acts of infringement; and, engages in substantial and not isolated activity within this state and/or this judicial district." (Doc. 18 ¶¶ 2–3). The Amended Complaint further alleges that "[o]n information and belief" Defendant has published the books of two Florida residents. (Id. ¶¶ 24–27). It is additionally alleged that "[b]ased on how Defendant describes its publishing process on its ... website, the books referenced in paragraphs 24 through 27 above[ ] were transferred electronically th[r]ough its interactive web site from Florida to Defendant and in turn, after receiving payment from the entities submitting the book manuscripts, copies of the book were sent back to Florida." (Id. ¶ 28).

In its motion to dismiss, Defendant contends "that there is no basis for the exercise of personal jurisdiction over the Defendant" by this Court. (Doc. 21 at 1). In support of the motion, Defendant has submitted the affidavit of its Chairman and Vice President, David Bradley. (Bradley Aff., Attach. to Doc. 13). In his affidavit, Mr. Bradley states that Defendant "is a Tennessee corporation, with its sole place of business in Collierville, Tennessee." (Id. ¶ 5). Mr. Bradley further states that Defendant:

- has never had retail stores in Florida;
- has never paid taxes in Florida;
- has never filed a lawsuit in Florida;
- has never been licensed to do business in Florida;
- has never had employees, representatives, or agents in Florida;
- has never had a parent/joint venture or other relationship with enterprises in Florida;
- has never owned or leased any real estate in Florida;
- has never held any bank accounts in Florida;
- has never had any investments in Florida businesses;
- has never warehoused or stored inventory or supplies within Florida;
- has never solicited business via television or radio advertisements within Florida;

- has never purchased advertising space in any Florida newspaper;

- has never contracted with an internet service provider located in Florida;

- has never maintained a listserv accessible within Florida;

- has never administered, operated, or moderated a newsgroup accessible within Florida;

- has never provided links to Websites active within Florida;

- has never participated in Internet chat with Florida residents;

- has never transmitted products or services over the Internet to Florida residents;

- has never remotely operated computers within Florida; and

- does not purchase goods or services from entities or individuals located within Florida.

(*Id.* ¶¶ 7–26).

Attached to Mr. Bradley's Affidavit is a copy of the "Terms and Conditions of Use" for Defendant's website. These Terms and Conditions include the following provision regarding "Governing Law and Jurisdiction":

> This AGREEMENT is governed by the laws of the State of Tennessee, U.S.A. without regard to the conflicts of laws principles thereof. USER consents to the exclusive jurisdiction and venue of the state and federal courts in Shelby County, Tennessee, U.S.A. in all disputes arising out of or relating to the use of this SITE. Use of this SITE is unauthorized in any jurisdiction that does not give effect to all provisions of these terms and conditions, excepting limitations in the Liability Disclaimer, including[,] without limitation, this paragraph and [Defendant] makes no representation that the CONTENT or services available on this SITE are ap-

propriate, lawful or available for use in other jurisdictions.

(Terms and Conditions of Use, Attach. to Bradley Aff., at 5).

In its opposition memorandum, Plaintiff maintains that the allegations of its Amended Complaint are sufficient to support the exercise of personal jurisdiction over Defendant. Plaintiff requests that, at a minimum, it be allowed to conduct jurisdictional discovery prior to dismissal of the case.

## II. Discussion

"The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis by the federal courts." *Cable/Home Commc'n Corp. v. Network Prods., Inc.,* 902 F.2d 829, 855 (11th Cir. 1990). First, the court "must examine the jurisdictional issue under the state long-arm statute." *Id.* Second, the court "must ascertain whether or not sufficient minimum contacts exist to satisfy the Due Process Clause ... so that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citations and internal quotations omitted). Because this is a patent infringement case, Federal Circuit law governs most aspects of the personal jurisdiction analysis. *See, e.g., 3D Sys., Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1377 (Fed.Cir.1998)("While we defer to the interpretation of a state's long-arm statute given by that state's highest court, ... when analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies.") (citations omitted); *N. Am. Philips Corp. v. Am. Vending Sales, Inc.,* 35 F.3d 1576, 1579 (Fed.Cir.1994) (noting that the tort of patent infringement "exists solely by virtue of federal statute, and defining its contours inevitably entails the construc-

tion of that statute—not the [state] long-arm statute").

### A. The Florida Long–Arm Statute

Although in the Amended Complaint Plaintiff alleges that Defendant "conducts business within this State and/or judicial district"[1] and that Defendant "engages in substantial and not isolated activity within this state and/or this judicial district,"[2] (*see* Am. Compl. ¶ 3), in its opposition memorandum Plaintiff confines its argument regarding satisfaction of Florida's long-arm statute to the contention that Defendant has "committed a tortious act in this state." (*See* Doc. 25 at 7). Thus, the Court limits its analysis to this argument.[3]

■ Plaintiff relies on section 48.193(1)(b), Florida Statutes, which provides for jurisdiction in this state over any person who "commit[s] a tortious act within this state" where the cause of action arises from that act. Application of this provision in the context of this case is less than straightforward, however, because " '[w]hile it may be appropriate to speak loosely of patent infringement as a tort, more accurately the cause of action for patent infringement is created and defined by statute. Defining the contours of the tort of infringement, which exists solely by virtue of federal statute, entails the construction of the federal statute and not a state's common or statutory law." *3D Sys., Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1379 (Fed.Cir.1998) (citations omitted).

Patent infringement is defined in the United States Code as the "mak[ing],

us[ing], offer[ing] to sell, or [sale of] any patented invention." 35 U.S.C. § 271(a); *see also 3D Sys.,* 160 F.3d at 1378 (quoting the statute and noting that "patent infringement results from an offer to sell as well as the sale itself"). In the Amended Complaint, Plaintiff alleges that Defendant has committed direct infringement by "offer[ing] for sale, sell[ing] and/or import[ing] books that are produced using methods and systems disclosed and claimed in" Plaintiff's patents. (Am. Compl.¶¶ 33, 40).

In *North American Philips Corp. v. American Vending Sales, Inc.,* 35 F.3d 1576, 1579 (Fed.Cir.1994), the Federal Circuit examined whether a tortious act had been committed in Illinois, where the long-arm statute—paralleling section 48.193(1)(b), Florida Statutes—provided for jurisdiction " 'as to any cause of action arising from' ... the 'commission of a tortious act' in Illinois." *See* 35 F.3d at 1578 (quoting 735 Ill. Comp. St. 5/2–209(a)(2) (1994)). The court noted that "unlike the 'making' and 'using' of an infringing article, which as purely physical occurrences are relatively straightforward to place, the 'selling' of an infringing article has both a physical and a conceptual dimension to it." *Id.* at 1579. The Federal Circuit then held that "to sell an infringing article to a buyer in [a particular state] is to commit a tort there (though not necessarily only there)." *Id.; accord F.A.C.E. Trading, Inc. v. Famiano,* No. 8:05–CV–1740T23TBM, 2006 WL 571723, at *5 (M.D.Fla. Mar.8, 2006).

This case law suggests that Plaintiff's allegations regarding the sale of infringing

---

**1.** Section 48.193(1)(a), Florida Statutes, provides for specific personal jurisdiction over persons who "conduct[ ] ... a business or business venture in this state ...."

**2.** Section 48.193(2), Florida Statutes, provides for general personal jurisdiction over "a

defendant who is engaged in substantial and not isolated activity within this state ...."

**3.** In any event, it does not appear to the Court that Plaintiff would prevail on an argument as to "conducting business" or "general jurisdiction."

products to Florida residents may be enough to satisfy the "tortious conduct" provision. Because the due process portion of the personal jurisdiction analysis, discussed below, is dispositive of the motion to dismiss, it is unnecessary for the Court to precisely define the parameters of the "tortious conduct" provision in the context of this case, including issues regarding the place of sale or offer for sale and whether the counts of the Amended Complaint "arise from" any such conduct. The Court assumes for the purposes of the instant motion that the "tortious conduct" portion of the long-arm statute has been satisfied here.

### B. Due Process

■ Even where a defendant's conduct falls within the forum state's long-arm statute, however, the exercise of jurisdiction is not proper unless it comports with due process. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). "[W]hether an exercise of personal jurisdiction satisfies due process in a patent case depends on three factors: (1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201–02 (Fed.Cir.2003)(quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed.Cir. 2001)).

Plaintiff alleges only two contacts that Defendant has had with Florida—the publication by Defendant of two books written by Florida residents. In the Amended Complaint, Plaintiff asserts the publication of these books (Am.Compl.¶¶ 24–27) and then alleges that "[b]ased on how Defendant describes its publishing process on its ... website, the books referenced ... in paragraphs 24 through 27 above[ ] were transferred electronically th[r]ough its interactive web site from Florida to Defendant and in turn, after receiving payment from the entities submitting the book manuscripts, copies of the book were sent back to Florida" (Am.Compl.¶ 28).

In support of its argument that Defendant has sufficient minimum contacts with Florida to satisfy the requirements of due process, Plaintiff relies solely on Defendant's websites. Plaintiff focuses on the "interactivity" of the websites, noting the "sliding scale" analysis set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997). In *Zippo*, a Pennsylvania district court determined:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A

passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

952 F.Supp. at 1124 (citations omitted). Plaintiff contends that under *Zippo,* the fact that Defendant's websites are "active" and allow the placing of orders through the Internet renders Defendant amenable to jurisdiction in Florida. Plaintiff also asserts—albeit only in a caption heading—that Defendant's websites are "Directed to Florida Residents." (Doc. 25 at 6).

Many courts have followed the *Zippo* approach, but its appeal has not been universal. The Federal Circuit has not yet set forth extensive guidance on the issue of Internet activity as a basis for minimum contacts. However, it has noted the different approaches taken by courts—including *Zippo*—and has at least implied that the availability of even an interactive website in a forum does amount to the direction of activity at that forum. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.,* 395 F.3d 1275, 1281 (Fed.Cir. 2005) (stating that the defendant's website was "not directed at customers in the District of Columbia, but instead is available to all customers throughout the country who have access to the Internet," and noting lack of clarity as to how frequently the website's interactive features were used, if at all, by forum residents).

Left without controlling authority from the Federal Circuit on the issue of the sufficiency of website contacts, this Court must forge its own course, aware that courts throughout the country have reached widely varying conclusions and that the law regarding Internet-based contacts is still evolving. After reviewing many decisions with many different fact patterns and varying outcomes, the Court agrees with the observations made by the Maryland district court in *Shamsuddin v. Vitamin Research Products,* 346 F.Supp.2d 804 (D.Md.2004), a patent infringement case with analogous facts.

In *Shamsuddin,* the court noted that other decisions have "criticized *Zippo's* emphasis on website interactivity," and the court "concur[red] with those courts and commentators that have concluded that '[t]he construction of the information superhighway does not warrant a departure from the well-worn path of traditional personal jurisdiction analysis.'" 346 F.Supp.2d at 811 (quoting *S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.,* 79 F.Supp.2d 537, 543 (E.D.Pa.1999)). The court continued:

Depending on the facts presented, website interactivity may have some bearing on the jurisdictional analysis, but it is not determinative.

.    .    .    .    .

Website interactivity is important only insofar as it reflects commercial activity, and then only insofar as that commercial activity demonstrates purposeful targeting of residents of the forum state or purposeful availment of the benefits· or privileges of the forum state. In the jurisdictional context, there is no critical difference between operating a toll-free, nationwide telephone number capable of accepting purchase orders, on the one hand, and operating a website capable of accepting purchase orders. Similarly, there is no critical difference between operating a middle-category, "interactive" website with an e-mail link or printable order form that allows custom-

ers to purchase at a later time, on the one hand, and operating an "active" website that allows customers to complete the purchase online. The ultimate question remains the same, that is, whether the defendant's contacts with the state are of such a quality and nature such [sic] that it could reasonably expect to be haled into the courts of the forum state.

*Id.* at 811, 813 (citation and internal quotation omitted).

The *Shamsuddin* court concluded on the facts before it that the plaintiff had not shown that the defendant had sufficient contacts with Maryland to support the exercise of personal jurisdiction. The defendant's "only contacts with Maryland [were] a commercial, interactive website which is accessible to Maryland residents (as it is to persons across the country and around the world), and two sales [one via the website, one via a toll-free telephone number] of the [allegedly infringing] product to Maryland residents who are acquaintances of [the] plaintiff."[4] *Id.* at 813. The court concluded that "[t]wo sales to Maryland residents and maintenance of a commercial website do not rise to the level of contacts of such 'quality and nature' that the exercise of personal jurisdiction ... would comport with due process." *Id.*

■ In the instant case, as in *Shamsuddin*, the exercise of personal jurisdiction over Defendant would violate due process. Plaintiff has alleged that "upon information and belief" two Florida residents have published books through Defendant. Plaintiff further asserts that it believes that these publications were made through the process described on Defendant's websites, which entails the downloading of software, the transmission of a manuscript

to the Defendant, and the shipment of the published books through the mail. These contentions, even accepted as true, are not sufficient to support the exercise by this Court of jurisdiction over Defendant.

Defendant has conditioned use of its website on agreement to a provision providing for "exclusive jurisdiction and venue of the state and federal courts in Shelby County, Tennessee." Defendant contends that this provision reflects that it could not anticipate being haled into court in Florida. Plaintiff correctly notes that this dispute is not between Defendant and a user of the site. However, while this provision is not dispositive of the Due Process issue, it is also far from irrelevant. Even courts that have followed the *Zippo* "sliding scale" analysis have endorsed the use of such agreements as a means for website-operating defendants to limit their amenability to suit in foreign jurisdictions. *See Stomp, Inc. v. NeatO, LLC,* 61 F.Supp.2d 1074, 1080–81 & n. 11 (C.D.Cal.1999) (describing such "clickwrap agreements," noting that they are "common on websites that sell or distribute software programs that the consumer downloads from the website," and noting that through such agreements "a local merchant may limit the jurisdictions to which it may be haled into court"); *accord Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.,* 105 F.Supp.2d 1142, 1152 (D.Or.2000) (noting that "[l]est personal jurisdiction in cases such as this be mistaken for over-reaching, those conducting business over the Internet can protect themselves with ... an interactive agreement that includes a choice of venue clause to which a consumer or client must agree before purchasing any products or receiving any services").

---

4. Although the two sales in *Shamsuddin* were to acquaintances of the plaintiff, the court was unable to conclude that the sales had been orchestrated by the plaintiff in order to "manufacture" personal jurisdiction. *See* 346 F.Supp.2d at 817 n. 8.

The Supreme Court has emphasized that "the foreseeability that is critical to due process analysis is ... that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "[T]he minimum contacts must be 'purposeful' contacts. The requirement for purposeful minimum contacts helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum. Fair warning is desirable [because] non-residents are thus able to organize their affairs, alleviate the risk of burdensome litigation by procuring insurance and the like, and otherwise plan for the possibility that litigation in the forum might ensue." *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1565 (Fed.Cir.1994) (citations omitted).

Accepting all of Plaintiff's contentions as true, Defendant could not reasonably anticipate being haled into court in Florida based on its operation of interactive websites accessible in Florida and its sales to two Florida residents. There is no indication of targeting or solicitation of Florida residents, and Defendant has conditioned the use of its website on agreement to litigate in Tennessee. To exercise jurisdiction over Defendant under these circumstances would run afoul of the requirement that "[m]inimum contacts must be 'purposeful' contacts in order to 'ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum.' " *F.A.C.E. Trading, Inc. v. Famiano,* No. 8:05–CV–1740T23TBM, 2006 WL 571723, at *5 (M.D.Fla. Mar.8, 2006) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–74, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)); *see also Shamsuddin,* 346 F.Supp.2d at 814 ("Asserting personal ju-

risdiction over [the defendant] on the basis of its isolated sales and interactive website would ignore the constitutional requirement of deliberate, rather than merely foreseeable, contacts."). The motion to dismiss is thus well-taken and shall be granted.

### C. Jurisdictional Discovery

In its opposition memorandum, Plaintiff—though maintaining that the jurisdictional allegations in the Amended Complaint are sufficient to support personal jurisdiction—requests that it be permitted to conduct jurisdictional discovery in the event that the Court finds otherwise. However, Plaintiff has only generally requested such discovery, without explaining how such discovery would bolster its contentions, and Plaintiff has not persuaded the Court that such discovery is warranted in this case. *Cf. Commissariat à L'Energie Atomique v. Chi Mei Optoelectronics Corp.,* 395 F.3d 1315, 1323 (Fed.Cir.2005) (finding that "jurisdictional discovery [was] of particular relevance" in the case before it and that the plaintiff had "clearly made a sufficient threshold showing to merit jurisdictional discovery"); *see also Shamsuddin,* 346 F.Supp.2d at 817–18 (declining to allow jurisdictional discovery). Thus, Plaintiff's request for jurisdictional discovery is denied.

### III. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion to Dismiss (Doc. 21) filed by the Defendant, Instantpublisher.com, is **GRANTED** and this case is hereby **DISMISSED** for lack of personal jurisdiction. All other pending motions are **DENIED as moot**. The Clerk shall close this file.