*722 OPINION OF THE COURT?
Philip S. Straniere, J.
Claimant, Emanuel Licitra, commenced this small claims action against the defendant, Gateway, Inc. (Gateway), alleging that the defendant failed to accept return of defective equipment and reimburse him the purchase price. Defendant filed a motion seeking (1) dismissal of the complaint on the grounds that the contract between the parties precluded a court action and limited the resolution of all disputes to arbitration; (2) an award to the defendant granting summary judgment on various theories; and (3) an order compelling arbitration pursuant to the CPLR. Claimant opposes the motion.
Defendant, in its papers, indicates that the correct name of the defendant is Gateway Corp. The agreement that the defendant claims is an enforceable contract between the parties indicates that the correct name is “Gateway Companies, Inc.” The copyright on the agreement is held by “2000 Gateway, Inc.” The trademark is registered to “Gateway, Inc.” Since the correct identity of the defendant is not raised as an issue and the defendant has agreed to appear and answer the action, the court does not have to address the issue of whether or not the use of all these different corporate entities is a deceptive practice under General Business Law article 22-A.
Background:
In January 2001 claimant allegedly presented Gateway with a certificate for a “free” computer or a $700 credit towards the purchase of one as part of a promotion with Isuzu Motors. On January 14, 2001 claimant ordered a computer that cost in excess of the $700. He was able to use the promotional certificate for credit. Claimant asserts that almost immediately he experienced problems with the computer and sought to return it to defendant and have his money refunded. After negotiating with the defendant he agreed to accept a replacement computer. He received a new unit on or about February 9, 2001. Claimant alleges that the new unit still did not operate properly and he again demanded to return it and receive his money back. Claimant contends that the defendant refused to do so but continued to only offer to fix or replace the unit.
It is common in this industry to accept orders for computers by telephone, facsimile transmission and electronic mail. These are often referred to as “cash now, terms later” transactions. The consumer pays for the equipment, usually by credit card, and the seller sends the equipment with the written agree *723 ment contained in the packaging with the item shipped. There is never a document signed by the parties. A contract results when the package is opened and the consumer uses the equipment for a specified period of time which is set forth in the written agreement. Courts have held that such a practice results in a binding contract between the parties, “[cjompetent adults are bound by such documents, read or unread” (Hill v Gateway 2000, 105 F3d 1147, 1149 [7th Cir 1997]; Brower v Gateway 2000, 246 AD2d 246 [1st Dept 1998]).
In this case the shipment to claimant contained a document with the following language in capital letters and bold type: “this AGREEMENT CONTAINS THE LIMITED WARRANTY AND TERMS AND CONDITIONS THAT APPLY * * * YOU AGREE THAT THIS AGREEMENT APPLIES TO YOUR PURCHASE OF THE PRODUCT, ACCESSORIES AND SERVICES. AFTER YOUR LIMITED MONEY BACK GUARANTEE EXPIRES, THE REMAINING PROVISIONS OF THIS AGREEMENT WILL CONTINUE TO APPLY. THIS DOCUMENT CONTAINS A DISPUTE RESOLUTION CLAUSE. PLEASE read section 9 below.” Section 2 of the agreement provides: “LIMITED MONEY BACK GUARANTEE * * * TO RECEIVE A REFUND THE LIMITED MONEY BACK GUARANTEE, YOU MUST NOTIFY GATEWAY OF YOUR DESIRE TO RETURN THE PRODUCT WITHIN THIRTY (30) DAYS OR FIVE (5) DAYS, AS APPLICABLE, FROM THE DATE YOU RECEIVED YOUR PRODUCT. YOU MUST ALSO RETURN THE PRODUCT AND ALL ACCESSORIES TO GATEWAY’S DESIGNATED ADDRESS WITHIN SEVEN (7) DAYS AFTER YOU RECEIVE A RETURN MERCHANDISE AUTHORIZATION (rMA) KIT AND OTHERWISE FOLLOW THE PROCEDURES SET FORTH IN THIS SECTION 2.”
Section 9 of the agreement states: “dispute resolution. You agree that any Dispute between You and Gateway will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules, except as otherwise provided below * * * You understand that You would have had a right to litigate disputes through a court, and that You have expressly and knowingly waived that right and agreed to resolve any Disputes through binding arbitration. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 USC Section 1, et seq.”
Before deciding the merits of this case the court must address a troubling issue. The computer industry and other courts have adopted the term “pizza box” to describe the package in which the document containing the terms and conditions of the agreement is shipped. As a matter of law in the State of New York, such a container is not a “pizza box.” No self-respecting *724 New York pizza would be caught soggy in such a box. The container may pass as a “pizza box” in those parts of the world that think food from Domino’s, Little Caesars, Pizza Hut, and Papa John’s is pizza. In this court’s opinion such a classification cannot be recognized east of the Hudson River.
Issues Presented:
A. Is There A Contract?
The first issue presented is whether or not a contract exists between the parties and, if so, what are the terms of the contract? Common sense tells us that if you pay money and receive a product in return, a contract has been created. The unique issue with the purchase of computers is that there is no negotiation of the terms of the agreement. The written “Agreement” arrives with the product and by retaining the computer for 30 days, the consumer consents to be bound by the terms of the entire writing. As cited above, courts have held this procedure creates a binding agreement between the parties. But in the words of Ira Gershwin, “It ain’t necessarily so.”
Accepting these holdings as being applicable, if the defendant, as a term and condition of filing a claim, required the consumer to sing “O Sole Mio” in Yiddish while standing on his or her head in Macy’s window, only Mandy Patinkin would qualify to object to the receipt of defective equipment. This cannot be so. What these decisions must mean is that a contract has been formed with the price, the equipment and time of delivery agreed to, but almost nothing else. All other terms of the “Agreement” proposed by the computer company must be subject to interpretation by the courts as being additional terms because, if not, they might conflict with state law or be against public policy. All terms of the “Agreement” should not be enforced merely because the consumer retains the equipment for 30 days after receipt, especially because it is unclear when the 30-day period to protest begins. Does it commence upon delivery of the goods to the carrier since the “Agreement” states that title passes upon “delivery to the carrier” (para 1), who, parenthetically, is selected by the shipper; or does it commence upon receipt by the consumer? Is the time period stayed in the all too common situation where a parent buys the computer as a present for a student and does not give the gift for several weeks or is the clock ticking while the equipment sits in the box?
There are several reasons why the clauses of the “Agreement” must be considered additional terms and not part of the contract. For instance, paragraph 8 of the document states *725 that the “Agreement is governed by the laws of South Dakota without giving effect to conflicts of law rules.” According to the document, Gateway Computer’s home office is in South Dakota. Suppose the computer arrives in a damaged condition or is not the correct model, the consumer would have to open the box to find out how to return the equipment. Upon doing so, the consumer would learn that the “Agreement” required the application of South Dakota law. How is a New York consumer supposed to know the law of South Dakota? Possibly by using the computer and going “on-line” to a Web site that has such legal information. Of course, by doing this, the consumer would be triggering the 30-day period. As an alternative solution, perhaps the consumer could locate one of the large cadre of attorneys that are admitted in both New York and South Dakota and obtain legal advice.
The Uniform Commercial Code has been adopted in South Dakota and presumably the rules are the same in that state as in New York. Under New York choice-of-law principles, contractual selection of governing law is generally determinative so long as the chosen state has sufficient contacts with the transaction, absent fraud or violation of public policy (PC COM v Proteon, Inc., 946 F Supp 1125 [1996]). UCC 1-105 provides: “when a transaction bears a reasonable relation to this state and also to another state * * * the parties may agree that the law either of this state or of such other state * * * shall govern their rights and duties. Failing such agreement this Act applies to transactions bearing an appropriate relation to this state.” The UCC presumes an agreement will be reached between the parties as to this issue. If the first notice of the terms of the “Agreement” is received by the consumer when the box is opened, how can an agreement have been reached? What is occurring is one side imposing its terms and conditions upon the other without any negotiation.
Defendant has argued that the consumer could have asked for a copy of the “Agreement” prior to ordering the computer. Its terms are available on-line, by facsimile transmission, or by mail. Under this scenario the customer would order a copy of the “Agreement,” review it, and then decide whether or not to order the equipment and be bound by the terms of the “Agreement.” It is obviously a “take it or leave it” situation since the terms of the “Agreement” are not negotiable and no opportunity or procedure is established to amend or question the terms. In any case, with whom would the consumer negotiate, the faceless sales staff or the legal department? Another *726 problem with this scenario is that when the equipment information is “downloaded” from the computer, it is usually accompanied by a disclaimer that the terms of the sale are subject to change by the seller at any time, which, of course, means that if the consumer bothers to order the document to study, the desired equipment or quoted price may no longer be available when review of the terms of the “Agreement” are completed. The Court, in Brower, applied the Marie Antoinette “let them eat cake” defense when it determined that this is not a “take it or leave it” situation and, therefore, not a contract of adhesion because the consumer has 30 days to reject the item and return the merchandise and has the ability to purchase the equivalent equipment from another vendor. Is this a real option or only a paper one? Would the court reach a different conclusion if every computer maker had a similar clause in its written agreement? Where in the entire transaction is there the ability of the consumer to negotiate the terms of the contract other than perhaps price and delivery date? To return an item the defendant must send the consumer a “return merchandise authorization” or “RMA.” It is unclear from the agreement if this is automatically generated by the defendant when a consumer voices dissatisfaction within the 30-day period or whether or not the defendant has discretion in issuing such an RMA. What if the defendant refuses to generate an RMA, is the consumer required to submit to “dispute resolution” as provided in the “Agreement” which the consumer has no intention of being bound by?
According to the defendant, the consumer should have opened the computer, read the “Agreement,” and then in some manner protested the applicability of every clause that was objectionable, a process that is not likely to occur. In fact, it can be argued that according to the “Agreement,” if the consumer objects to the dispute resolution paragraph, the consumer would have to go through dispute resolution in order to challenge its enforceability. Defendant, in asserting that the “Agreement” is binding on the parties, had the burden of establishing what is the applicable South Dakota law. The defendant has failed to do so. Therefore, the court will be applying New York law and public policy considerations.
It should also be pointed out that in the Brower case, the plaintiffs had commenced a class action lawsuit against Gateway Computers. Clearly, that situation is distinguishable from this fact pattern, where an individual consumer is seeking to invoke the protection of the small claims procedure. An *727 argument can be made that the plaintiffs in those actions, by commencing litigation in the Supreme Court rather than utilizing alternate dispute resolution techniques such as arbitration, had selected a forum that both federal and state law was seeking to discourage as a method for dealing with certain commercial conflicts.
There is a contract between the parties entered into when the computer was ordered. The written “Agreement” includes additional terms to be interpreted pursuant to New York law. B. Are the Parties Required to Use Arbitration?
Defendant argues that this action must be dismissed as the “Agreement” requires the parties to submit all disputes to arbitration. The initial issue to be resolved is whether a binding contract can result when there is no signed written agreement between the parties. The case law cited above establishes the principle that the contract is formed between the parties, not upon the placement or receipt of the order, but by the customer retaining the merchandise for more than 30 days without objection (Brower, supra, at 251; Hill, supra, at 1148; ProCD, Inc. v Zeidenberg, 86 F3d 1447 [7th Cir 1996]). Accepting this as being the applicable law, the question remains whether the acknowledgment of the existence of a contract means that all of the terms listed in the “Agreement” are binding on the parties.
For the reasons set forth below, the court must find that the arbitration clause of the “Agreement” (para 9) is not binding on the parties.
First, the expenses involved in arbitration as opposed to the cost of small claims court, where both trial by a judge and arbitration are available, makes arbitration not a viable alternative for many persons. Currently, the cost of filing an action in small claims court in New York City by an individual is $15. Defendant has provided the court with a copy of the Code of Procedure of the NAF, the exclusive arbitration group provided for by the “Agreement.” On page 39 of the Code of Procedure the “fee schedule” section begins. The court notes that the pages referred to on page 39 do not correspond to the pages on which the information indicated actually appears. The filing fee for a consumer claim of $5,000 or less is $49, an amount over three times that of small claims court. This, however, only entitles the parties to a “documentary” hearing. If the parties want a “participatory” hearing where “an Arbitrator receives testimony or arguments and reviews documents or property to render an Order or Award” (definitions [P] [1]), the *728 consumer must pay an additional $75 fee. This means that for the same $15 fee in small claims court the consumer must expend $124, over eight times the cost! It is obvious that these costs can make arbitration not a viable alternative for many consumers.
The New York State Legislature, in establishing small claims parts in the Civil Court, stated these courts “shall constitute a simple, informal and inexpensive procedure for the prompt determination of such claims in accordance with the rules and principles of substantive law” (CCA 1802 [emphasis added]). Small claims court gives a litigant the option of having an “informal” procedure before an arbitrator or a more formal trial before a judge. The defendant cannot by “contract” deny access to small claims court without a specific and agreed-to written waiver by the consumer. Small claims court has been established to provide a quick and low-cost forum for the resolution of disputes. It is not a procedure subject to a pinky hitting the delete key.
Second, the small claims procedure requires that the case be heard “as soon as practicable” (22 NYCRR 208.41 [c]). Whereas the NAF Code of Procedure provides 30 days for the respondent to answer the claim (rule 13 [A]) and then at least 30 days’ notice to the parties of the date of a participatory hearing (rule 26 [C]). There is nothing in the NAF Code that states how much time the NAF has to issue the claim form for service on the respondent after having received the information which constitutes the basis of the complaint from the consumer. The time involved in the arbitration process also makes it unfair to require the customer to be limited only to this type of relief, especially when small claims actions in Richmond County are usually on the court’s calendar in less than a month after filing.
Third, the NAF Code limits a hearing to one hour in regard to claims of $5,000 or less (rule 34 [B]). Although most small claims actions do not take that long to try or arbitrate, there is no clock. Quite often, unrepresented parties require additional time to articulate their position. In Civil Court we play all nine innings until the game is over and do not stop when the whistle blows because time has run out.
Fourth, NAF Code rule 32 (A) sets the venue for the arbitration “at a reasonably convenient location within the United States federal district or other national judicial district where the Respondent to the initial Claim resides or does business.” Does this mean that the location of the hearing must be in South Dakota where Gateway indicates it maintains its pri *729 mary office or is Gateway present in every federal district in the United States for this purpose? Accepting for the moment that Gateway, as respondent, “does business” in New York State, is the location of the arbitration anywhere in one of the four federal court districts in New York State permitted? Or must it be heard in the Eastern District where both parties are present so that the Staten Island consumer plaintiff may face the possibility of commuting to Montauk for the hearing? Do not the venue provisions of Civil Court Act article 3 provide a more reasonable and convenient location for the resolution of the dispute?
Fifth, NAF Code rule 35 (F) states that “[n]o record of a hearing shall be kept” unless agreed to by the parties or ordered by the arbitrator. Similarly, no record is kept when the parties agree to have the issues decided by a small claims arbitrator. On the other hand, if the small claims action is heard by a judge, a record is made of the proceedings free of charge to the litigants. Under NAF rules there is a fee charged for making a record, to be paid either by the parties if they agree, or by the party making the request for a record if no agreement is reached. Again, another cost is being added to the procedure that may make it not a viable option to a consumer. If the consumer wants to appeal the arbitrator’s decision to the court system, the transcript will be a necessary additional expense.
Sixth, if an interpreter is needed, the “[p]arty who requires the interpreter shall arrange and pay for the interpreter” (NAF Code rule 35 [G]). It should be noted that in the Civil Court there is no charge to the parties for the use of an interpreter. Aside from the added cost imposed by the NAF Code, serious due process arguments could and should be raised by a system which requires a consumer to engage in a procedure to resolve a dispute where the consumer would have to pay a fee in order to understand what is going on. Such a requirement raises the spectre of a litigant having to abandon the ability to effectively participate in the process to the economic reality of not being able to afford to pay for an interpreter.
Seventh, the NAF Code directs that the arbitrator shall make an award based on the “preponderance of the evidence” (rule 37 [H]). This is in sharp contrast to the statutory directive that small claims actions be decided so as to do “substantial justice” (CCA 1804).
Eighth, the prevailing party in a NAF proceeding may recover fees paid in the arbitration (rule 44 [E]). Presumably, *730 this could include the $250 the respondent is required to pay as an administrative fee when filing a response to the claim. In small claims court an award of costs and disbursements would only run in favor of the claimant and would include only the filing fees and costs incurred in attempting to collect the judgment by using the marshal or the sheriff. The NAF Code could not only result in the consumer claimant losing the action, but also in the imposition of an award of fees double the expenses the consumer already incurred in filing the NAF arbitration. This is another example of the economics of the arbitration process potentially having a “chilling effect” on the consumer’s rights.
Ninth, a pleading in a small claims action shall consist of a statement in a concise written form (CCA 1803), while a claim under the NAF Code is to include a statement in plain language of the nature of the dispute, the facts and law supporting the claim, the specific relief requested and the reasons supporting the relief, the specific amount and the computation of any money or damages alleged due (rule 12 [A]). The NAF procedure goes far beyond what the New York State Legislature envisioned as the “simple, informal” procedure to be available to the residents of this state for the resolution of small claims. It does not contemplate the typical situation of an unrepresented claimant trying to express himself or herself in a cogent manner. Again, requiring a consumer to use the procedure of the “Agreement” places an unreasonable burden on the claimant and defeats the legislative purpose behind small claims.
Finally, assuming that the UCC applies to the transaction, under UCC 2-207 in New York, between merchants, new terms in a written confirmation do not become part of the parties’ agreement if they materially alter the terms of the agreement (Leadertex, Inc. v Morganton Dyeing & Finishing Corp., 67 F3d 20 [2d Cir 1995]) and it has been held that an arbitration clause is presumptively a material alteration when introduced as an additional term (Avedon Eng’g v Seatex, 126 F3d 1279 [1997]). If both parties are not merchants, such as this case where there is a merchant-seller and consumer-purchaser, additional terms are to be construed to be proposals for additions to the contract and therefore must be specifically agreed to by the other party in order to be binding (Klocek v Gateway, Inc., 104 F Supp 2d 1332, 1341 [D Kan 2000]).
It can only be concluded, therefore, that this action cannot be dismissed because it was brought in small claims court. The arbitration clause of the “Agreement” is not enforceable. As *731 stated by the Court in Marek v Laufer & Son (257 AD2d 363, 364 [1st Dept 1999]), “A party who consents to arbitrate ‘waives in large part many of his normal rights under the procedural and substantive law of the State, and it would be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent’ (Matter of Marlene Indus. Corp. [Carnac Textiles], 45 NY2d 327, 333-334). Consent to arbitrate cannot be given by inadvertence. ‘It is settled that a party will not be compelled to arbitrate and, thereby, to surrender the right to resort to the courts, absent “evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes” * * * The agreement must be clear, explicit and unequivocal * * * and must not depend upon implication or subtlety’ (Matter of Waldron [Goddess], 61 NY2d 181, 183-184 [citations omitted]).”
C. There is No Basis to Grant Defendant Summary Judgment.
Although, in its notice of motion, defendant cites several reasons why it should be granted summary judgment dismissing claimant’s complaint, the affirmation in support of the motion only refers to the “court lacking subject matter jurisdiction” over this matter. CCA 1801 defines a small claims as any cause of action for “money only” not in excess of $3,000. Claimant’s complaint, on its face, states a cause of action in that he alleges that he is seeking the refund of money for defective equipment. Claimant wants his money refunded and not new equipment. Defendant apparently is willing to replace the equipment and does not want to refund any monies. The “Agreement” permits refunds to the consumer within 30 days of purchase. Factual issues exist as to when the claimant received the computer, when he notified the defendant it was defective and when he demanded his money back. An issue remains also as to whether or not the acceptance of replacement equipment triggers a new 30-day period for rejection or creates a situation where receiving new equipment is the only remedy available since the original 30-day period has expired and the consumer has “elected” the remedy of replacement rather than refund.
The part of defendant’s motion seeking summary judgment must be dismissed.
D. The Federal Arbitration Act Does Not Apply.
Defendant, in its motion, asks for relief based on the Federal Arbitration Act (9 USC § 4) in that the “Agreement” contains a mandatory arbitration clause. Both federal and state law favor the resolution of disputes by the use of arbitration and title 9 *732 of the United States Code is in place to foster this end. For title 9 to be applicable, the transaction must be one that arises from interstate commerce. The fact that defendant is in South Dakota and the claimant in New York and interstate commercial means were used to order and ship the equipment places the subject matter of the contract under the general definition of title 9 (9 USC § 2). However, it is also clear that the existence of this title does not in and of itself create a cause of action under federal law and any attempt to bring an action in Federal District Court to enforce an arbitration clause must have an independent basis of federal jurisdiction (Kehr v Smith Barney, Harris, Upham & Co., 736 F2d 1283 [9th Cir 1984]; Klocek v Gateway Inc., 104 F Supp 2d 1332 [D Kan 2000]). There is no federal question involved in this dispute, nor is there an amount in controversy that would permit the action to be brought on diversity of citizenship grounds. Since the amount in dispute is less than $2,000, the jurisdiction is a state court matter and small claims court is the appropriate forum for the resolution of the claim.
E. Arbitration Cannot Be Compelled Under Article 75 of the CPLR.
Defendant is asking for alternative relief pursuant to CPLR 7503 (a), alleging that it is entitled to an order compelling arbitration. This section provides that: “A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration. Where there is no substantial question whether a valid agreement was made or complied with * * * the court shall direct the parties to arbitrate.” For the reasons stated above, the defendant is not entitled to an order compelling arbitration. Again, assuming the validity of the underlying agreement, the arbitration clause cannot be enforced when it is used as a means to deprive a consumer from having the matter resolved in small claims court absent a clear, specific, knowingly written waiver of that right by the consumer. Arbitration is supposed to be a quick, more efficient and less costly forum for resolving disputes. The analysis above reveals that such is not the case when arbitration is compared to small claims procedure. Arbitration is foreclosed where it contravenes a strong public policy or an important constitutional or statutory duty (Mineola Union Free School Dist. v Mineola Teachers Assn., 46 NY2d 568 [1979]). Parties are not to be led into arbitration unwittingly through subtlety (Matter of Perfect Fit Prods. Mfg. Co. [Pantasote Co.], 5 Misc 2d 348 [1957]). There is no question that the clauses of the “Agreement” were not *733 negotiable. The consumer is required to accept the entire “Agreement” if the consumer wants to purchase the equipment.
New York law cannot sanction compelling a consumer to utilize a more onerous method of resolving disputes than one provided by the Legislature.
Conclusion:
Defendant’s motion to compel arbitration and for other relief is denied in its entirety.