2005 OK CIV APP 29

**V.J. LIVELY, Plaintiff/Appellee,**

v.

**IJAM, INC., a Georgia Corporation, and Monarch Computer Systems, Inc., a Georgia Corporation, Defendants/Appellants.**

**No. 99,357.**

Court of Civil Appeals of Oklahoma, Division No. 4.

April 19, 2005.

---

John M. Freese, Sr., Brian L. Mitchell, Freese & March, Tulsa, OK, for Plaintiff/Appellee.

Mark Banner, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, for Defendants/Appellants.

Opinion by JERRY L. GOODMAN, Presiding Judge:

¶1 IJAM, Inc., and Monarch Computer Systems, Inc., (collectively Defendants) appeal from a judgment in favor of Plaintiff, V.J. Lively.[1] The issue on appeal is whether the trial court properly determined that it had in personam jurisdiction over these Georgia corporations. Upon review of the record on appeal and applicable law, we find that the trial court erred in finding that it had jurisdiction based on the evidence before it. Therefore, we reverse its decision and remand the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2 Lively, an Oklahoma resident, filed a small claims affidavit in Tulsa County District Court on November 8, 2002, alleging that he purchased a laptop on April 2, 1999, from Monarch Computer Systems, a Georgia corporation. He claimed the computer was manufactured, delivered, and invoiced through, IJAM, Inc., which is also a Georgia corporation. Lively alleged that the two corporations share the same address and service

---

1. This case was reassigned to the author on December 13, 2004.

agent. He contended that he contacted Monarch in February 2000 after the computer began malfunctioning. After being informed that the computer was still under warranty, Lively returned the computer to Monarch for repair. Monarch sent the computer back to Lively in June 2000. Lively claims that the computer again stopped working about two weeks after he received it from Monarch. He alleges that he contacted Monarch and was told to return the computer for repair. Lively claims that he returned the computer to Monarch a second time, but since returning it, he has not heard from Monarch or IJAM and they have not returned the computer.

¶ 3 Lively had previously filed a small claims action against Monarch and its president, Richard Harris, and was awarded judgment by default in the amount of $2,000.00 on November 9, 2000. The parties agreed to vacate the default judgment due to insufficient service. Lively claims that Monarch and IJAM owe him $1,748.00, or in the alternative, they should return his computer and give him the reasonable costs and legal fees incurred in bringing the matter to small claims court.

¶ 4 On December 5, 2002, Monarch and IJAM filed a special appearance and motion to transfer the action from the small claims docket to the civil docket. Defendants asked for the transfer so that they could contest the court's in personam jurisdiction.

¶ 5 Lively submitted a brief in support of personal jurisdiction with an affidavit attached in which he stated that he owns a small business and was approached by a client regarding the purchase of a laptop. In April 1999, Lively ran an online search for a laptop computer. He claims he came across the web page of Monarch which contained an advertisement for certain laptops along with an online order form. He talked to his client about a computer he found on Monarch's web page. The client agreed that Lively would purchase the computer and the client would then reimburse Lively. Lively claims that he accessed the Monarch "web page a second time to see if they made available a telephone number and/or address for placing orders and whether they shipped out-of-state." He

claims that he printed the online order form, but decided to place the order by telephone "[t]o save time." He further claims that he spoke to a Monarch representative, was assured that the laptop came with a one-year warranty, and then placed his order for the laptop. Lively claims he received the laptop from IJAM shortly thereafter, in April 1999, along with an invoice.

¶ 6 Lively returned the computer to Monarch in February 2000 for repairs. Monarch did not return the computer to him until June 2000. However, approximately two weeks later, the computer malfunctioned again. Lively claimed that he returned the computer by UPS at the end of June 2000, but did not hear again from Monarch. When contacted, Monarch informed him that it no longer performed in-house repairs and had sent the computer to another company. Lively never received the computer back from either Monarch or another entity.

¶ 7 On January 21, 2003, Defendants filed a motion to quash service and dismiss the action for lack of in personam jurisdiction. Defendants submitted the affidavit of Andrew Levy, chief financial officer of Monarch, in which he stated Monarch is a Georgia corporation with its principle place of business in Tucker, Georgia; it builds computer systems and sells them on an internet website; it has no officers or employees in Oklahoma; and Monarch has no record of having sold a computer or related products to Lively.

¶ 8 Defendants also submitted the affidavit of Carol F. Harris, President of IJAM, in which Harris stated that IJAM is a Georgia corporation with its offices located in Tucker, Georgia. IJAM has no offices or employees in the state of Oklahoma. IJAM has a website on the internet where it offers computers and related products for sale. Harris admits that Lively purchased a computer from IJAM in April 1999 and that Lively shipped the computer back to IJAM in February 2000 for repairs. The computer was repaired and shipped back to Lively in Oklahoma. Harris further claimed that the sales invoice sent to Lively contained a "consent to jurisdiction" provision.

¶ 9 Defendants also provided a copy of the invoice sent to Lively with the laptop which revealed that the computer had been shipped to Lively on April 7, 1999. The invoice reflected a total price of $1,748.00. On the back of the invoice, IJAM included fifteen items of "terms and conditions." The consent to jurisdiction provision provides the following:

> This Contract is entered into in Stone Mountain, Georgia and shall be governed by and construed in accordance with the laws of the State of Georgia. The parties agree that the exclusive jurisdiction and venue of any action with respect to this Contract shall be the State Courts in De-Kalb County, Georgia, or, if there is federal jurisdiction, the U.S. District Court for the State of Georgia.

In their brief, Defendants assert that the Oklahoma court did not have jurisdiction over Monarch because it did not sell the computer to Lively and was not in any way involved in the transaction.

¶ 10 Lively later submitted an amended affidavit in which he stated there was a scrivener's error in his earlier affidavit and that all references to Monarch in the earlier affidavit should be changed to IJAM. Therefore, Lively claimed that he purchased the computer after finding it on the IJAM website and that the contract was between Lively and IJAM. He further stated that Monarch and IJAM share the same corporate officers.

¶ 11 After a trial in the matter on April 17, 2003, the trial court entered judgment in favor of Lively in the amount of $2,000.00. The court found IJAM and Monarch jointly and severally liable for the judgment. Additionally, the court awarded Lively costs in the amount of $91.00. The court also gave Lively ninety days in which to file an application for an attorney's fee. Monarch and IJAM appeal.

## STANDARD OF REVIEW

¶ 12 The question of whether the trial court had in personam jurisdiction over Monarch and IJAM presents this court with a question of law. Questions of law are reviewed de novo. *Clayton v. Fleming Cos.,* 2000 OK 20, ¶ 11, 1 P.3d 981, 984. "In a de novo appellate review the court exercises its judgment independently and without deference to the findings of fact or to the legal rulings made below." *Stidham v. Special Indemnity Fund,* 2000 OK 33, ¶ 10, n. 17, 10 P.3d 880, 885, n. 17.

## ANALYSIS

### I. Forum Selection Clause

¶ 13 Monarch and IJAM assert the trial court erred when it refused to enforce the forum selection clause contained in the invoice. As stated above, Lively did not receive the invoice containing the forum selection clause until he received the computer. The question before this court is whether the forum selection clause applies to Lively's lawsuit.

¶ 14 Title 12A O.S.2001, § 2–204(1) states: "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." If after a contract is formed, additional terms are proposed by one of the parties, "[t]he additional terms are to be construed as proposals for addition to the contract." 12A O.S.2001, § 2–207(2). If both parties to a contract are merchants, § 2–207(2) provides that the additional "terms become part of the contract unless: (a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." Section 2–207(3) further provides the following:

> Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act.

Furthermore, the Uniform Commercial Code Comment contains the following analysis:

In many cases, as where goods are shipped, accepted and paid for before any disputes arises, there is no question whether a contract has been made. In such cases, where the writings of the parties do not establish a contract, it is not necessary to determine which act or document constituted the offer and which the acceptances. See Section 2–204. The only question is what terms are included in the contract, and subsection (3) furnishes the governing rule.

12A O.S.2001, § 2–207(Uniform Commercial Code Comment 7).

¶ 15 In *Old Albany Estates, Ltd. v. Highland Carpet Mills, Inc.,* 1979 OK 144, 604 P.2d 849, the Oklahoma Supreme Court concluded that a contract for the sale of carpet existed prior to the delivery of the carpet or the receipt of an invoice by the buyer. The invoice given to the buyer after the first payment was made contained a warranty disclaimer which required the buyer to submit any claim against the seller within ten days after delivery. *Id.* at ¶ 13, n. 8, 604 P.2d at 852. The seller asserted that the terms in the invoice were additional terms that became part of the contract because the buyer accepted the carpet. The Oklahoma Supreme Court disagreed, finding that a contract of sale existed prior to the delivery of the carpet or buyer's receipt of the invoice. *Id.* at ¶ 14, 604 P.2d at 853. Citing § 2–207, it noted that the disclaimer could not become part of the contract because it materially altered the contract and the buyer never agreed to the alteration. *Id.* at ¶ 15, 604 P.2d at 853. The Court found that the disclaimer did not became a part of the contract by the buyer's mere act of accepting the carpet. *Id.* The Court stated, "The fact plaintiff accepted the goods has no effect on this conclusion as a contract already existed; acceptance of the carpet was not necessary to create it." *Id.*

¶ 16 Similarly, we find that a contract of sale existed between Defendants and Lively prior to the receipt of the invoice. Lively had already paid for the computer before it was shipped and a contract existed before Lively opened the box and found the invoice. Therefore, the question presented here is whether the terms of the invoice, including the forum selection clause, became part of the contract.

¶ 17 Any analysis under § 2–207(2) must begin with a determination of whether both parties to the contract were merchants. If we assume that Lively is not a merchant, § 2–207 requires that we treat the provisions of the invoice as "proposals for addition to the contract." In *Klocek v. Gateway, Inc.,* 104 F.Supp.2d 1332 (D.Kan.2000), a federal district court concluded that a purchaser, who was not a merchant, did not accept the "standard terms and conditions" which were included in the package containing the computer that the purchaser purchased from the seller. The court found that, under § 2–207, the standard terms "would constitute a counter-offer only if [the seller] expressly made its acceptance conditional on [the buyer's] assent to the additional or different terms." *Id.* at 1340. The additional or different terms only became a part of the contract if the buyer expressly agreed to the terms. The court concluded that the buyer did not expressly agree to those terms merely by keeping the computer for a specified time. *Id.* If we consider Lively to be a consumer and not a merchant, we must reach a similar conclusion. There is no indication that Lively expressly accepted the terms and, therefore, the terms of the invoice did not become part of the contract. The forum selection clause does not apply under these facts.

¶ 18 The provisions of § 2–207 may also be applied if Lively was considered to be a merchant. However, because this is a small claims action, the record is sparse, and we cannot definitively determine if Lively qualifies as a merchant. Under 12A O.S.2001, § 2–104, a merchant is described as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction...." In an affidavit submitted to the trial court, Lively stated, "I am knowledgeable in computers and computer software and, additionally, work as a computer technician for local businesses." In that same affidavit, Lively described how he purchased the laptop for a client.

¶ 19 If we assume that Lively is a merchant, we are compelled to reach the same conclusion—that the terms are not part of the contract—but for different reasons. Under § 2–207(2), additional terms become a part of the contract unless, among other reasons, the terms materially alter the contract. Other jurisdictions have concluded that forum selection clauses are material terms to a contract. *See, e.g., Cunningham v. Fleetwood Homes of Georgia, Inc.,* 253 F.3d 611, 612, n. 13 (11th Cir.2001)(arbitration clauses, like other kinds of forum selection clauses, are generally considered material terms under state law variants of the Uniform Commercial Code); *Hugo Boss Fashions, Inc. v. Sam's European Tailoring, Inc.,* 293 · A.D.2d 296, 742 N.Y.S.2d 1 (2002)(finding that invoice containing forum selection clause and waiver of jury materially altered the parties' oral contract for sale of goods); *Product Components, Inc. v. Regency Door and Hardware, Inc.,* 568 F.Supp. 651 (S.D.Ind.1983)("forum selection clauses contained in seller's acknowledgment form and invoice materially altered the parties' contract"); *Step–Saver Data Systems, Inc. v. Wyse Technology,* 939 F.2d 91(3rd Cir.1991)(finding that disclaimer of warranty printed on software package materially altered the parties' agreement and was not to be incorporated into the parties' contract).

¶ 20 In *Licitra v. Gateway, Inc.,* 189 Misc.2d 721, 734 N.Y.S.2d 389 (N.Y.City Civ. Ct.2001), a New York Court found that the buyer of a personal computer was not bound by an agreement which arrived with the computer. It concluded that the terms of the agreement should not be enforced merely because the buyer chose to retain the computer he purchased from the seller. The Court stated, "It is obviously a 'take or leave it' situation since the terms of the 'Agreement' are not negotiable and no opportunity or procedure is established to amend or question the terms." *Id.* at 393. We agree with the reasoning of these courts and find that a forum selection clause materially altered the contract between Defendants and

Lively. Therefore, we find that the forum selection clause was not part of the contract.

¶ 21 Finally, in a case recently issued by another division of this Court, *Rogers v. Dell Computer Corp.,* Case No. 99,991,[2] this court concluded that the plaintiffs were not bound by an arbitration clause contained in a "terms and conditions" document that was included with the invoice or acknowledgment of the plaintiffs' order for a computer. We found that the trial court correctly denied Dell's motion to compel arbitration. Our decision rested on the fact that Dell had reserved the right to unilaterally amend the agreement. In reaching its decision, we discussed the plaintiffs' contention that they were not bound by the "terms and conditions" document because the document was delivered with their computer and they did not agree to be bound by the terms of the agreement. The *Rogers* court did not need to fully analyze the issue of acceptance of the terms of the agreement under the Uniform Commercial Code because that issue was not dispositive. Nevertheless, the reasoning of *Rogers* supports our analysis.

¶ 22 In summary, the forum selection clause contained in the invoice does not alter the terms of the contract between Lively and Defendants. Lively is not bound by any terms contained therein. Since jurisdiction over Defendants is not contractually decided, we must determine if jurisdiction can be obtained by personal jurisdiction.

## II. Personal Jurisdiction

¶ 23 Defendants also assert on appeal that the trial court lacked in personam jurisdiction over them. In personam jurisdiction, or jurisdiction over the person, refers to a court's "power to deal with the person of the defendant, and to render a personal judgment against him, and is acquired by the service of a summons or other proper notice, or it may be by voluntary appearance in person or by counsel." *Hobbs v. German–American Doctors,* 1904 OK 60, ¶ 5, 78 P. 356, 357. Title 12 O.S. Supp.2004, § 2004 governs the process by which a person is

---

2. This case has been designated for publication by the Oklahoma Court of Civil Appeals but, as of this writing, is awaiting disposition of a pending petition for certiorari. We regard this case as persuasive authority, but not precedential.

summoned into court. Section 2004(F) provides the authority for service of process outside the state: "A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." The intent of § 2004(F), which is referred to as a long-arm statute, "is to extend the jurisdiction of Oklahoma courts over non-residents to the outer limits permitted by the Oklahoma Constitution and by the due process clause of the United States Constitution." *Hough v. Leonard,* 1993 OK 112, ¶ 7, 867 P.2d 438, 442 (footnotes omitted).

¶ 24 "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528(1985), quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). Therefore, the Due Process Clause imposes limits on the power of a state court to render a personal judgment against a nonresident defendant. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Furthermore, the Due Process Clause also "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 297, 100 S.Ct. at 567.

¶ 25 The United States Supreme Court has opined that the decision as to "[w]hether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe,* 326 U.S. at 319, 66 S.Ct. at 160. The Court determined that, in order to subject a nonresident defendant to in personam jurisdiction, he or she must "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.* at 316, 66 S.Ct. at 158, quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct.

339, 343, 85 L.Ed. 278 (1940). Therefore, in order to determine if a court has in personam jurisdiction over a nonresident, the court must examine a defendant's contacts, ties, and relations to the state.

¶ 26 However, there are two types of in personam jurisdiction: general and specific. *Deerinwater v. Circus Circus Enters.,* 2001 OK CIV APP 37, ¶ 11, 21 P.3d 646, 650. In order to establish general jurisdiction, it must be shown that the nonresident defendant has maintained "continuous and systematic contact" with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16, n. 9, 104 S.Ct. 1868, 1872–73, n. 9, 80 L.Ed.2d 404 (1984). "The facts required to establish general jurisdiction must be 'extensive and persuasive.' " *Deerinwater,* 2001 OK CIV APP 37 at ¶ 11, 21 P.3d at 650, quoting *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 589 (3rd Cir.1982). If general jurisdiction is found, "all causes of action against the defendant, whether or not related to the defendant's activities in that state, may be pursued in its courts." *Deerinwater, id.* Here, there is nothing in the record on appeal which indicates that Defendants had continuous and systematic contacts with Oklahoma. Therefore, there is no general jurisdiction over Defendants.

¶ 27 A court's exercise of jurisdiction is referred to as specific jurisdiction where the lawsuit arises out of the nonresident defendant's contacts with the forum state. *Helicopteros,* 466 U.S. at 414, n. 8, 104 S.Ct. at 1872, n. 8. A finding of specific jurisdiction requires a two-step analysis. A court must first determine whether a nonresident defendant has minimum contacts with the forum state. *Deerinwater,* 2001 OK CIV APP 37 at ¶ 12, 21 P.3d at 650. If minimum contacts do exist, the court must then determine whether the court's assertion of jurisdiction "would comport with traditional notions of 'fair play and substantial justice.' " *Klassen v. Lazik,* 2004 OK CIV APP 46, ¶ 11, 91 P.3d 90, 93, quoting *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. "The assertion of in personam jurisdiction comports with 'fair play and substantial justice' if it is

reasonable to require the defendant to defend suit in the forum." *Klassen, id.* A court should consider the following factors when determining reasonableness:

> the burden on the defendant .... the forum State's interest in adjudicating the dispute, ... the plaintiff's interest in obtaining convenient and effective relief, ... at least when that interest is not adequately protected by the plaintiff's power to choose the forum, ... the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

*World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564 (citations omitted). Specific jurisdiction is at issue here because Lively's lawsuit arises out of, or relates to, the product IJAM sold to Lively.

¶ 28 Although Lively ultimately placed his order via telephone, he received IJAM's contact information from the website. Therefore, we must examine the problems that arise when determining jurisdiction where internet transactions are involved. We have found no Oklahoma cases dealing with the issue of personal jurisdiction where the contact between the parties is initiated through the internet. However, a discussion of jurisdiction in a case involving an internet transaction must still center around establishing minimum contacts. In analyzing minimum contacts, we must assess the nature and quality of a defendant's internet activity. *See Machulsky v. Hall,* 210 F.Supp.2d 531, 539 (D.N.J.2002).

¶ 29 *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Penn. 1997), is often cited as the groundbreaking case in the area of internet-related personal jurisdiction issues. The *Zippo* Court introduced a "sliding scale" framework in which to analyze personal jurisdiction. At one end of the scale is a defendant who clearly does business over the internet through a commercial website. "If the defendant enters into contracts with residents of a foreign jurisdiction that involve the *knowing and repeated transmission* of computer files over the Internet, personal jurisdiction is proper."

*Id.* at 1124 (footnote omitted; emphasis added). At the other end of the scale is a passive website on which "a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." *Id.* The court concluded that a passive website that simply conveys information "is not grounds for the exercise of personal jurisdiction." *Id.* In the middle of the scale are "Web sites where a user can exchange information with the host computer." *Id.* If a case falls within this middle ground, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

¶ 30 However, a more traditional in personam jurisdiction analysis can also be applied. One author offered the following opinion about applying traditional analysis to internet-related cases:

> Under the traditional analysis, a defendant must act in some way to purposefully avail herself of the benefits of the forum state. Thus, the test emphasizes the result of the defendant's action, rather than the means the defendant used to conduct her activity. *Because a defendant's Internet activity can only occur through her actions in the physical world, the traditional analysis can be used because it emphasizes the result of the defendant's Internet usage, rather than the defendant's use of the Internet.*
>
> In contrast, a technology-specific test tends to ignore the underlying actions. Internet interactivity is a characteristic of the website itself and not necessarily evidence of conduct directed at any particular forum. As a result, a person purposefully avails herself of the forum state not through the medium she used, Internet or otherwise, but through her transaction or intended effect in the forum.

TiTi Nguyen, *A Survey of Personal Jurisdiction Based on Internet Activity: A Return to Tradition,* 19 Berkeley Tech. L.J., 519, 541 (footnotes omitted; emphasis added).

¶ 31 A United States District Court in Maryland recently addressed the issue of whether a website that sold the nonresident

defendant's products and proof that two Maryland residents ordered from the website amounted to significant contacts so that the court could exercise jurisdiction over a Nevada corporation. *See Shamsuddin v. Vitamin Research Products,* 346 F.Supp.2d 804 (D.Md.2004). The court noted that, in examining the question of jurisdiction, "there is no critical difference between operating a toll-free, nationwide telephone number capable of accepting purchase orders, on the one hand, and operating a website capable of accepting purchase orders." *Id.* at 813. The court went on to opine that "[a] corporation's sales to forum residents must be more than 'isolated' occurrences for the assertion of jurisdiction to satisfy the requirements of due process." *Id.* The court reasoned that, to allow jurisdiction based on "isolated sales and [a] website would ignore the constitutional requirement of deliberate, rather than merely foreseeable contacts." *Id.* at 814.

¶ 32 In *ESAB Group, Inc. v. Centricut,* 126 F.3d 617 (4th Cir.1997), the United States Court of Appeals for the Fourth Circuit found that a New Hampshire company did not have sufficient minimum contacts with the forum state, South Carolina, where the company conducted its business entirely through mail order, did not target South Carolina residents, and the company's sales to residents only accounted for one-tenth of one percent of the its nationwide sales.

¶ 33 In *Millennium Enterprises, Inc. v. Millennium Music, LP,* 33 F.Supp.2d 907 (D.Or.1999), the United States District Court of Oregon found that the court did not have personal jurisdiction over a South Carolina company that maintained a website that allowed customers to purchase compact discs. The court offered the following analysis:

> While the Internet allows businesses to engage in international communication and commerce, those businesses,—whether they be one-person operations or multinational corporations—remain "entitled to protection of the Due Process Clause, which mandates that potential defendants be able 'to structure their primary conduct with some assurance as to where the conduct will and will not render them liable to suit.'"

*Id.* at 914. The court went on to explain that, unlike other forms of media, internet advertisements and solicitations are not targeted to a specific geographic location. Instead, "advertising on the Internet targets no one in particular and everyone in any given geographic location." *Id.* The court found that the capability to sell compact discs on the defendant's website could arguably constitute "doing business" on the internet." *Id.* at 920. However, the court found that the designation of "doing business" as set out in cases like *Zippo,* was "intended for those businesses which conduct a significant portion of their business through ongoing Internet relationships; for example, by entering 'into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet.'" *Id.,* quoting *Zippo,* 952 F.Supp. at 1124. The court concluded that the defendant did not repeatedly exchange files and, therefore, was not "doing business" over the internet.

■ ¶ 34 What is clear from a review of the case law is that the key to analyzing the personal jurisdiction in internet-related cases is to look at the nature and quality of the defendant's internet activity. In reaching our decision, we must be mindful that the burden of proof is on the party asserting jurisdiction. *Roberts v. Jack Richards Aircraft Co.,* 1975 OK 72, ¶ 6, 536 P.2d 353, 354.

¶ 35 Here, the only alleged contact that Defendants had with Oklahoma was the sale of the computer to Lively. Lively found IJAM's website and subsequently called and made a purchase. Lively claims that IJAM advertised its business online. However, Lively does not specifically indicate how he found IJAM's website or the nature of IJAM's advertising. More importantly, neither IJAM nor Monarch maintain any offices in Oklahoma and they do not have any employees or agents in this state. The question, therefore, is whether the single transaction over the internet gives rise to personal jurisdiction.

¶ 36 In *Machulsky v. Hall,* 210 F.Supp.2d 531(D.N.J.2002), the United States District Court of New Jersey addressed the issue of whether a single purchase and subsequent

correspondence regarding the purchase constitutes minimum contacts. The court concluded that it did not. The court noted that "[g]enerally the act of entering into a contract within a foreign jurisdiction, without more, cannot serve as a basis for asserting personal jurisdiction over a nonresident defendant." *Id.* at 539. Additional factors such as the duration of a defendant's relationship with the forum state must be considered. *Id.* The court concluded that a nonresident defendant's single purchase was not enough to establish minimum contacts with the seller's home state. The court found that "commercial activity via the Internet must be substantially more regular and pervasive to constitute 'purposeful availment of doing business' within a given state." *Id.*

¶ 37 Although Oklahoma courts have not addressed the issue of jurisdiction for internet-related activity, it has addressed the issues of contacts through mail and telephone conversations. In *Gregory v. Grove*, 1976 OK 5, 547 P.2d 381, the Oklahoma Supreme Court found that a Washington, D.C., corporation's yellow page listing in a Tulsa telephone directory coupled with correspondence by both mail and telephone with an Oklahoma resident provided sufficient minimum contacts to exercise long-arm jurisdiction over the corporation. The Court reasoned that the "[t]otality of the contacts between the parties in Oklahoma are to be considered in determining the sufficiency to exercise jurisdiction under long-arm service. *This may include telephone conversations and letters*." *Id.* at ¶ 6, 547 P.2d at 383 (emphasis added).

■■■ ¶ 38 The Supreme Court has also held that the absence of multiple acts within the state of Oklahoma "is not necessarily fatal to the exercise of state power over a foreign corporation." *B.K. Sweeney Co. v. Colorado Interstate Gas Co.*, 1967 OK 95, ¶ 10, 429 P.2d 759, 762. In fact, the Court went on to declare,

> There exists no constitutional barrier to holding that a foreign corporation which does a single act or consummates a single

transaction in the forum state would be amenable to suit for damages arising out of that transaction, irrespective of whether additional contacts with the state exist or not. The state may reach non-resident defendants in suits growing out of acts or transactions which have created 'minimum contacts' with the forum state, however limited or transient such contacts may be.

*Id.*[3] Although the decision recognizes that a single transaction can give rise to jurisdiction, it also recognizes that minimum contacts must be present before jurisdiction may be exercised over the foreign defendant. We are unwilling to definitively hold that, in every situation, one internet-related transaction alone will support the application of personal jurisdiction. In each instance, sufficient minimum contacts with the forum state must be shown by the plaintiff.

■■■ ¶ 39 If we were to hold that the ability of an out-of-state resident to access a website was enough to establish jurisdiction, personal jurisdiction could almost always be found in any jurisdiction in the country. An approach that specifically analyzes a foreign business's activity directed at the state of Oklahoma is a more reasoned approach. The operator of a website should be able to measure with some predictability the forums in which he or she may be subjected to jurisdiction. In keeping with this principle, we hold that the amount of contacts or orders originating from persons within Oklahoma must be taken into consideration when determining whether personal jurisdiction exists. Such an approach will allow a court to apply such information to determine the nature and quality of a defendant's internet activity within Oklahoma.

¶ 40 Here, there is insufficient evidence in the record to determine the nature and quality of Defendants' contacts with Oklahoma. We cannot determine if Defendants' purported activity constitutes the minimum contacts required by Oklahoma's long-arm statute and the Due Process Clause. We do not know the specifics of Defendants' advertising, both on and off the internet. We do not know

---

3. The lawsuit at issue in *B.K. Sweeney Co.* was commenced before Oklahoma passed its long-    arm statute.

how many customers in this state have made purchases from Defendants. In fact, Lively did not even purchase the computer through the website. Instead, he ordered the computer over the phone. Therefore, there is no indication in the record that even one Oklahoma resident ordered via the internet from Defendants' site. We understand that the record may be devoid of evidence on the issues because this case was decided in small claims court. However, based on the evidence before us, we cannot say that sufficient minimum contacts exist to support jurisdiction. The fact that Defendants had a web site that anyone in Oklahoma could access, in and of itself is not enough to permit our courts to exercise personal jurisdiction over Defendants.

## CONCLUSION

¶ 41 We find that the forum selection clause contained in the invoice sent by IJAM to Lively did not apply under these facts because it was not a part of the contract between the parties. Therefore, jurisdiction is not contractually established. Further, we find that there is insufficient evidence in the record to properly determine if the trial court had personal jurisdiction over Defendants. Accordingly, we reverse the decision of the trial court and remand the matter for further proceedings to determine the nature and qualify of Defendants' contacts with Oklahoma.

¶ 42 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

STUBBLEFIELD, J., concurs, and RAPP, V.C.J., concurs in part and dissents in part.

RAPP, V.C.J., concurring in part and dissenting in part:

¶ 1 I concur as to Part I—Forum Selection Clause—because I agree with the characterization of these clauses as unilateral "escape hatches" made in *Simpson v. Grimes*, 849 So.2d 740 (La.Ct.App.2003).[1] I would, therefore, find the forum selection clause unenforceable.

¶ 2 I cannot agree, however, with the Majority concerning its rationale for specific jurisdiction in this matter discussed in Part II—Personal Jurisdiction—of this Opinion, because I find sufficient evidence to support specific jurisdiction. I would hold Defendants were not a passive internet business for the reason they posted a website on the internet offering merchandise for sale, without any qualifying geographical restrictions or distinctions, and intended to invite all who viewed the website to examine and accept their offer of sale. Defendants intended to, and sought to do business wherever the website was viewed and its posted offer accepted. Here, the website was accessed and the offer accepted when the order was placed via telephone. Under such conditions, I believe that internet commerce, such as in the case before us, does involve minimal contacts sufficient to vest specific jurisdiction in this State where the acceptance was made to Defendants' internet offer and where the merchandise was delivered. This conclusion finds support in the Internet Tax Freedom Act, Pub.L. No. 105–277, Div. C, Title XI, §§ 1100 to 1104, Oct. 21, 1998, 112 Stat. 2681–719.[2] which recognizes the ability of internet businesses to do business in all states where their merchandise is offered for sale because of the moratorium on taxing such sales by states. Further, I would hold that the posting of merchandise on a website and offering to sell without restricting such sales to a specific geographical area is not dissimilar to mass multistate mailings by businesses to residents of other states. In such instances, I am confident that the modern view of extending the Oklahoma long-arm statutes to protect its citizens would then apply. By way of analogy, a child pornography website is a crime where opened and viewed regardless of the location of origin from whence it is disseminated. *See* 21 O.S. Supp.2004, § 1040.13a.

¶ 3 I must also disagree with the Trial Court's judgment in favor of Plaintiff. It

---

1. *See also Rogers v. Dell Computer Corp.*, No. 99,991, Okla. Civ.App. (Feb. 1, 2005) (pet. for cert. pending).

2. Title 47 U.S.C.A. § 151 note.

appears from the record that Plaintiff's testamentary evidence concerning the return of the ordered merchandise and its receipt did not rise to the level of even the preponderance of the evidence. Thus, Plaintiff's proffered evidence failed to sustain the Trial Court's judgment in favor of Plaintiff and requires reversal.

¶ 4 I would therefore concur as to Part I of the Majority's Opinion. I would dissent as to Part II, finding that the Trial Court had jurisdiction, but reversing on the merits.